PETER M. FOLEY v. L & L INTERNATIONAL, INC. AND LYLE LATHE

No. 8710SC215

(Filed 16 February 1988)

1. Corporations § 1.1— corporation as defendant's mere instrumentality—insufficiency of evidence

The trial court properly dismissed plaintiff's claims against the individual defendant based on the allegation that defendant corporation was his "mere instrumentality," since plaintiff's evidence tended to show only that plaintiff and his family held a majority of the corporate stock, but more evidence than that is required before a corporation can be found to be a sham and the mere instrumentality of one of its officers.

2. Contracts § 27.2— contract to deliver car—breach—sufficiency of evidence

Evidence was sufficient to be submitted to the jury on plaintiff's claim for breach of contract where it tended to show that plaintiff made a down payment on a car which defendant promised to deliver within 90 days or refund the deposit; defendant did not deliver the car as promised or refund the deposit, but instead continued to make false statements for seven months concerning his efforts to obtain the promised vehicle and its shipping status; and the 90-day delivery promise was some evidence that defendant regarded 90 days as a reasonable period for performing the contract.

3. **Contracts § 27.3— contract to deliver car—damages not limited to refund of deposit**

A contract for the sale of a vehicle which promised delivery within 90 days or plaintiff's deposit would be refunded did not limit plaintiff's relief to refund of the deposit, since the contract did not state that a refund was plaintiff's exclusive remedy; plaintiff did not exercise the option of settling for the return of his deposit; and even if the contract gave defendant the option of terminating the agreement by returning plaintiff's deposit, defendant clearly forfeited that right by repeatedly claiming after the 90-day period expired that it was in the process of performing the contract.

4. **Unfair Competition § 1— keeping down payment on car—failure to order car— unfair and deceptive trade practice**

Plaintiff's evidence that defendant kept his down payment on a car for seven months without even attempting to get the car he had promised to obtain, while falsely claiming that the car had been obtained and would be delivered shortly, was some evidence of a deceptive trade practice which N.C.G.S. § 75-1 condemns and makes recoverable, and the trial court therefore erred in dismissing plaintiff's claim.

5. **Fraud § 9— failure to allege reliance on misrepresentation—fraud claim properly dismissed**

The trial court properly dismissed plaintiff's claim for fraud in the sale of a vehicle where plaintiff sufficiently alleged defendant's fraudulent purpose, but there was no allegation that plaintiff relied upon defendant's false representations and no allegation as to what that reliance resulted in. N.C.G.S. § 1A-1, Rule 9(b).

APPEAL by plaintiff from *McLelland, Judge*. Judgment entered 9 December 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 25 September 1987.

*Peter M. Foley, pro se, plaintiff appellant.*

*Zimmer and Zimmer, by Samuel A. Mann, for defendant appellees.*

PHILLIPS, Judge.

This action is based upon the failure to receive a foreign car that the corporate defendant contracted to sell plaintiff. The corporate defendant, though not an authorized dealer for any automobile manufacturer, through various sources in Europe and elsewhere gets foreign cars of particular makes and models and sells them to individual purchasers; it is situated in New Hanover County and the individual defendant is its President. On 31 August 1985 the corporate defendant contracted in writing to sell

plaintiff a new 1986 British Racing Green Jaguar XJ Sovereign with biscuit-colored leather interior for $30,500, of which plaintiff paid $4,575 and agreed to pay the balance upon delivery. The contract contains the following clause:

> Due to shipping arrangements, the exact date of delivery cannot be given at this time. We do however, guarantee that the automobile described above will be delivered to the shipper and the Bill of Lading will be dated no more than ninety (90) days from the date of this contract or we will refund, in full, all funds deposited on the automobile described above.

In late November 1985 plaintiff inquired of the defendants about the delivery date and was told that two Jaguars had been received but because of a mix-up neither satisfied plaintiff's order and the car would be there by Christmas or the first of the year. The car has never been delivered and on 25 March 1986 plaintiff brought suit, alleging breach of contract, deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes, and fraud; he alleged that the individual defendant is liable for the corporate defendant's contract and misdeeds because it was his "mere instrumentality." At trial a verdict was directed against all his claims at the end of plaintiff's evidence.

[1] The dismissal of plaintiff's claims against the individual defendant, based on the allegation that the corporation was his "mere instrumentality," was manifestly correct because evidence to support that allegation was not presented. In essence, plaintiff's evidence on this point tends to show only that defendant and his family held a majority of the corporate stock, and as *Glenn v. Wagner*, 313 N.C. 450, 329 S.E. 2d 326 (1985) makes plain, more evidence than that is required before a corporation can be found to be a sham and the mere instrumentality of one of its officers. But plaintiff's evidence amply supports the breach of contract and deceptive trade practices claims against the corporate defendant and the judgment directing a verdict against those claims is vacated.

[2] In brief, plaintiff's evidence, when viewed in its most favorable light, tends to show by documents elicited during discovery that defendant did not even ask its German agent to obtain the car plaintiff ordered until 24 February 1986; that defendant never had an invoice or bill of lading showing that the

Foley v. L & L International

car had been bought or shipped, as copies of such documents, requested and promised several different times, were never given plaintiff; nevertheless, that between Christmas 1985 when delivery of the car was promised and 25 March 1986, when suit was filed, Lathe and another company employee told plaintiff several times and the Attorney General's office once in various telephone conversations that though the car had been obtained it had not been delivered for various reasons, none of which were so. The statements, all but one to plaintiff, were as follows: In early January 1986 that the car had been delayed by bad weather at sea, but was en route to Nova Scotia, New York and Wilmington; on 18 January 1986 that the ship had arrived in this country but they would not know whether the car was aboard until the documents were received the next week; the next week that his car had been shipped to Houston; a few days later that an auto transport truck would pick up the car in Houston and deliver it to Wilmington; a few days after that that the car had not been delivered because the truck had engine trouble; a few days later that a truck could not deliver the car here until it had a full load to this area and the man in Houston would send the title documents; still later that a Gary Graham in Houston had his car (though Graham told plaintiff when he called that while he had a car fitting the description of plaintiff's order the defendants had not talked to him about buying it); around 10 February 1986 that a car for him had been bought but the seller had failed to deliver it and he had sued the seller; in late February or early March that his car was shipped from Germany on 27 February 1986 and would get here in seventeen days; on 5 March 1986 (to Ms. Grimes of the Attorney General's office) that he had talked to the European dealer and the car would be shipped the following day and would arrive in twenty days; two days later that the car was "on the water," and the title information would be telexed immediately.

[3] To say the least, the foregoing is certainly *some* evidence that the corporate defendant breached its contract to deliver the car that it contracted to obtain and the jury, rather than the court, should have determined that claim. Since the contract did not state when delivery was to be made and it is for the sale of goods it is governed by the Uniform Commercial Code. G.S. 25-2-309 provides that when the time for delivery is not stated "the

time . . . shall be a reasonable time." Defendant does not argue that the seven months that it had to perform the contract was not a reasonable time; and it would be vain to do so, of course, since its guarantee in the contract to refund plaintiff's down payment if delivery was not made within ninety days, if not an implied promise to deliver within that time, is at least an indication that defendant regarded ninety days as a reasonable period for performing the contract. But defendant does argue that the contract limits plaintiff's relief to the refund of his down payment. This argument has no merit for three reasons: *First*, the contract does not state that a refund is plaintiff's *exclusive* remedy. G.S. 25-2-719 provides that a remedy stated in the contract "is optional unless the remedy is expressly agreed to be exclusive," and in *Williams v. Chrysler-Plymouth, Inc.*, 48 N.C. App. 308, 269 S.E. 2d 184, *disc. rev. denied*, 301 N.C. 406, 273 S.E. 2d 451 (1980), we held that that provision means what it says. *Second*, plaintiff did not exercise the option of settling for the return of his deposit. *Third*, even if the contract gave defendant the option of terminating the agreement by returning plaintiff's deposit, and we do not so interpret it, defendant clearly forfeited that right by repeatedly claiming after the ninety day period expired that it was in the process of performing the contract. *Hutchins v. Davis*, 230 N.C. 67, 52 S.E. 2d 210 (1949).

[4] It is equally clear, we think, that keeping a customer's down payment on a car for seven months without even attempting to get the car it had promised to obtain, while falsely claiming that the car had been obtained and would be delivered shortly, as plaintiff's evidence indicates, is *some* evidence of a deceptive trade practice that G.S. 75-1, *et seq.* condemns and makes recoverable.

[5] But the directed verdict against plaintiff's claim for fraud was correct and must be upheld, because that claim was not adequately stated under our Rules of Civil Procedure. As to that claim plaintiff alleged in Count IV of his complaint that "the actions of the Defendants, as set forth above, have been intentional and constitute a fraud." The actions referred to were statements the defendants allegedly made to him, which he alleged "were untrue, were known by Defendants to be untrue when made, and were designed by Defendants to frustrate Plaintiff in the attempt to coerce Plaintiff into cancelling the agreement because the cost

of new Jaguars had increased so that Defendants' profit on the sale of the vehicle was minimal or non-existent." While this is an adequate statement of defendant's fraudulent purpose, it says nothing either directly or by reference about plaintiff relying upon the false representations or what that reliance resulted in; and though under our present system of notice pleading many omissions can be overlooked or supplied by construction, this omission is fatal to the claim. For Rule 9(b) of our Rules of Civil Procedure provides that "[i]n . . . fraud . . . the circumstances constituting fraud . . . shall be stated with particularity," and this rule has been interpreted to require allegations as to all of the elements of fraud, including the plaintiff's reasonable reliance. *Rosenthal v. Perkins*, 42 N.C. App. 449, 257 S.E. 2d 63 (1979). Since a valid fraud claim was not before the court, refusing to permit the jury to consider the fraud issue was not error.

Affirmed in part; vacated in part; and remanded.

Judges COZORT and GREENE concur.