WESTON GRIFFITH, JR., PLAINTIFF v. GLEN WOOD COMPANY, INC. D/B/A WOOD
BROTHERS, AND ROUSH CORPORATION, D/B/A ROUSH RACING, AND PAT
TRYSON, DEFENDANTS

No. COA06-635

(Filed 19 June 2007)

**1. Contracts— breach—testing of NASCAR part—summary judgment**

Conflicting evidence was sufficient to raise a genuine issue of
fact in a breach of contract claim concerning metallurgical test-
ing on a NASCAR part, and the trial court should not have granted
summary judgment for defendant.

**2. Corporations— foreign—not suspended in N.C.—defense to breach of contract not applicable**

There was no evidence that the State of North Carolina had
suspended the articles of incorporation or certificate of authority
of an Illinois corporation of which plaintiff was the sole share-
holder (it had been involuntarily dissolved and reinstated), and
the defendant's affirmative defense that a contract was invalid did
not apply.

**3. Contracts— interference with—prohibited testing of NASCAR part—summary judgment**

The trial court did not err by granting summary judgment for
a NASCAR crew chief on a claim for tortious interference with
contract regarding prohibited metallurgical testing on a NASCAR

———————————

part. There was no evidence that he induced his codefendant to breach the contract (which forbade the testing).

### 4. Conversion— NASCAR part—serious departure from lease—issue of fact

The trial court erred by granting summary judgment for defendants on a claim for conversion where a NASCAR crew chief retained possession of a leased part when he began working for a competitor and conducted testing prohibited by a contract. The parties' disagreement about whether these actions amounted to a major or serious departure from the terms of the lease creates a genuine issue of material fact.

### 5. Conversion— respondeat superior—scope of employment—issue of fact

Summary judgment against defendant Wood Brothers was not appropriate on a respondeat superior claim for conversion of a NASCAR part by a crew chief working for Wood Brothers. Reasonable minds could differ on whether the crew chief's action was within the scope of his employment.

### 6. Trade Secrets— misappropriation—ascertainable through reverse engineering—not a trade secret

The trial court did not err by granting summary judgment for defendant on a claim for misappropriation of trade secrets regarding a NASCAR part. There was testimony that the part was readily ascertainable through reverse engineering; the idea cannot therefore be defined as a trade secret.

### 7. Unfair Trade Practices— NASCAR part—metallurgical testing

The trial court did not err by granting summary judgment for defendant on a claim for unfair and deceptive trade practices arising from a NASCAR crew chief retaining, sampling, and analyzing the metal in a leased part.

Appeal by plaintiff from judgments entered 27 December 2005 by Judge W. Erwin Spainhour in Superior Court, Cabarrus County. Heard in the Court of Appeals 10 January 2007.

*Katten Muchin Rosenman LLP, by Jeffrey C. Grady and Christopher A. Hicks, for plaintiff-appellant.*

*Hartsell & Williams, by Christy E. Wilhelm, for defendant-appellee Glenn Wood Company, Inc.*

*Helms Mullis & Wicker, PLLC, by Tracy Strickland, for defend-
ant-appellee Pat Tryson.*

STROUD, Judge.

Plaintiff Weston Griffith, Jr. (Griffith) appeals from the trial court order granting summary judgment in favor of defendants Glen Wood Company, Inc., and Pat Tryson (Tryson) as to all claims. For the reasons that follow, we affirm in part, reverse in part, and remand.

## I. Facts

The evidence in the record, drawing all inferences in favor of plaintiff, *Collingwood v. G. E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989), tends to show the following: Solid Steel Company, Inc. (Solid Steel) was an Illinois corporation involved in metal recycling. Griffith was the sole shareholder and president of Solid Steel. Solid Steel was involuntarily dissolved on 2 March 1998 and reinstated on 26 February 2004. Glen Wood Company, Inc., a Virginia corporation doing business as Wood Brothers, competed in NASCAR automobile racing. Defendant Wood Brothers was head-quartered in Virginia. Eddie Wood was a manager in Wood Brothers. Roush Racing[1] (Roush) was a competitor of defendant Wood Brothers on the NASCAR racing circuit. Defendant Tryson was employed by defendant Wood Brothers as the crew chief for the 2003 NASCAR season. As crew chief, defendant Tryson was responsible for maximizing the performance of the race car. (R. 275)

Griffith, through Solid Steel, re-engineered a truck arm (Part X or truck arm), part of the suspension, to improve the speed and performance of a race car. Solid Steel assigned its rights in Part X to Griffith on 15 March 2004, and Griffith is the sole plaintiff in this case.

At a test session at the Kansas Speedway in September 2003, Part X was installed on a race car owned by defendant Wood Brothers. On 29 September 2003, after the test at the Kansas Speedway, Griffith, on behalf of Solid Steel, entered into a lease contract with defendant Wood Brothers for Part X.

Pursuant to the contract, defendant Wood Brothers leased four (4) sets of Part X from 29 September 2003 to 17 November 2003. In the lease contract, defendant Wood Brothers "agree[d] to not cut, punch, form, deform, . . . or test (in any metallurgical way), [Part X],

---

1. The original complaint in this case named Roush Racing as a defendant, but plaintiff did not appeal from summary judgment granted in favor of Roush Racing.

without] written consent by Solid Steel." Defendant Wood Brothers also "agree[d] to not 'share' any information obtained [from Part X] with . . . any fellow NASCAR competitor." Defendant Wood Brothers installed a set of Part X on one of its race cars.

After the NASCAR race at Phoenix, defendant Wood Brothers entered an agreement with Roush for the final two races of 2003. As part of the agreement, defendant Pat Tryson, still employed by defendant Wood Brothers, worked as crew chief for Roush for the last two races of 2003. Defendant Tryson took at least one set of Part X with him to Roush.

Defendant Wood Brothers' lease contract with Solid Steel for Part X terminated on 17 November 2003. Defendant Wood Brothers then returned to Griffith and Solid Steel three (3) of the four (4) sets of Part X leased under the contract, but not the set defendant Tryson took to Roush. Plaintiff requested return of the fourth set of Part X, but it was not immediately returned.

Before the fourth set of Part X was returned to Solid Steel, Eddie Wood, in casual conversation with defendant Tryson, remarked, "I wonder what the trick [to Part X] is." Even though Eddie Wood testified in his deposition that he meant nothing by this remark, intending to return Part X to Solid Steel intact, defendant Tryson interpreted this comment as an order to drill a hole in Part X and test it metallurgically. Defendant Tryson drilled a core sample out of one set of Part X and gave the core sample to an engineer for Roush. The final set of Part X, minus the core sample, was returned to Griffith in December 2003.

## II. Procedural History

Plaintiff filed a complaint on 24 January 2005, seeking damages from defendant Wood Brothers for misappropriation of trade secrets, conversion, unfair and deceptive trade practices (UDTP), and breach of contract. In the same complaint, he sought damages from defendant Tryson for misappropriation of trade secrets, conversion, UDTP, and interference with contractual relationship. Defendant Tryson answered on or about 31 March 2005, denying the material allegations of the complaint. Defendant Wood Brothers answered on or about 28 April 2005, also denying the material allegations in the complaint.

Defendant Wood Brothers filed a motion for summary judgment on or about 30 November 2005. Defendant Tryson filed a motion for summary judgment on or about 2 December 2005. The trial court

entered summary judgment in favor of both defendants as to all claims on or about 27 December 2005. Plaintiff appeals from entry of summary judgment in favor of defendants.

### III. Standard of Review

The trial court must grant summary judgment upon a party's motion when "there is no genuine issue as to any material fact and . . . any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56. (2005) On appeal, an order granting summary judgment is reviewed *de novo. Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004).

Summary judgment is appropriate if: (1) the non-moving party does not have a factual basis for each essential element of its claim; (2) the facts are not disputed and only a question of law remains, *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972); or (3) if the non-moving party is unable to overcome an affirmative defense[2] offered by the moving party, *Bonestell v. North Topsail Shores Condominiums*, 103 N.C. App. 219, 222, 405 S.E.2d 222, 224 (1991) (holding that summary judgment was properly granted when the claim was filed after the statute of limitations had run).

On the other hand, summary judgment is not appropriate when there are conflicting versions of the events giving rise to the action, or when there is no conflict about the events that occurred, but the legal significance of those events is determined by a reasonable person test. *Lopez v. Snowden*, 96 N.C. App. 480, 482-83, 386 S.E.2d 65, 66 (1989).

### IV. Issues

A. Breach of Contract

**[1]** Plaintiff contends that the trial court erred when it granted summary judgment in favor of defendant Wood Brothers on the breach of contract claim. We agree.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). The record contains a contract signed by officers of Solid Steel and defendant

---

2. "An affirmative defense is a defense that introduces a new matter in an attempt to avoid a claim, regardless of whether the allegations of the claim are true." *Williams v. Pee Dee Electrical Membership Corp.*, 130 N.C. App. 298, 301-02, 502 S.E.2d 645, 647-48 (1998).

Wood Brothers on 29 September 2003 for the lease of four sets of Part X, which plaintiff purports to be a valid contract. In that contract, defendant Wood Brothers "agree[d] to not cut, punch, form, deform, . . . or test (in any metallurgical way), [Part X], [without] written consent by Solid Steel." Defendant Wood Brothers also "agree[d] to not 'share' any information obtained [from Part X] with . . . any fellow NASCAR competitor." The record contains evidence that a core sample was drilled out of Part X and that the core sample was given to a Roush engineer for testing. Defendant Wood Brothers denied drilling out a core sample and giving it to a Roush engineer. If plaintiff proves that defendant Wood Brothers, through its agents, drilled out a core sample or gave any part of it to a Roush engineer for testing, either action would be a breach of an express term of the lease contract. This evidence is sufficient to raise a genuine issue of material fact as to the breach of contract claim. Defendant is therefore not entitled to summary judgment on the breach of contract claim unless it asserts an affirmative defense which plaintiff cannot overcome.

[2] Defendant asserts the affirmative defense that Solid Steel was subject to revenue suspension per N.C. Gen. Stat. § 105-230 at the time the contract was signed, thereby making the contract invalid. If Solid Steel was in fact under revenue suspension per N.C. Gen. Stat. § 105-230, the contract it entered into with defendant Wood Brothers would be invalid under North Carolina law. *South Mecklenburg Painting Contr'rs, v. Cunnane Grp.*, 134 N.C. App. 307, 312, 517 S.E.2d 167, 170 (1999) (holding that a contract entered into during a period of revenue suspension per G.S. § 105-230 is invalid and may not be enforced). However, N.C. Gen. Stat. § 105-230[3] applies only to entities whose "articles of incorporation, articles of organization, or certificate of authority" have been suspended by the State of *North*

---

3. N.C. Gen. Stat. § 105-230 (2005) reads in pertinent part:

(a) If a corporation or a limited liability company fails to file any report or return or to pay any tax or fee required by this Subchapter for 90 days after it is due, the Secretary shall inform the Secretary of State of this failure. The Secretary of State shall suspend the articles of incorporation, articles of organization, or certificate of authority, as appropriate, of the corporation or limited liability company. . . . The powers, privileges, and franchises conferred upon the corporation or limited liability company by the articles of incorporation, the articles of organization, or the certificate of authority terminate upon suspension.

(b) Any act performed or attempted to be performed during the period of suspension is *invalid* and of no effect, unless the Secretary of State reinstates the corporation or limited liability company pursuant to G.S. 105-232.

(Emphasis added.)

*Carolina.* It does not apply to entities that have been subject to similar actions in other states. N.C. Gen. Stat. § 105-230.

The record contains evidence that Solid Steel was incorporated in Illinois, not North Carolina. There is no evidence that Solid Steel was doing business in North Carolina when the contract was entered,[4] and no evidence that Solid Steel ever had a certificate of authority from the State of North Carolina. Drawing inferences from these facts in plaintiff's favor, as we must for purposes of summary judgment, *Collingwood*, 324 N.C. at 66, 376 S.E.2d at 427, there is no evidence that the State of North Carolina suspended the articles of incorporation or certificate of authority of Solid Steel, thereby invalidating the lease contract. If proved, these inferences show that plaintiff is able to overcome defendant Wood Brothers' affirmative defense to the lease contract. Therefore, defendant Wood Brothers has not shown that it is entitled to summary judgment on the basis of its affirmative defense. Because defendant Wood Brothers has not shown that it is entitled to summary judgment on either the elements of plaintiff's claim or on its own affirmative defense, we reverse entry of summary judgment in favor of defendant Wood Brothers on the breach of contact claim.

B. Tortious Interference with Contract

[3] Plaintiff contends that the trial court erred when it granted summary judgment on his claim for tortious interference with contract in favor of defendant Tryson. We disagree.

Plaintiff argues that defendant Tryson interfered with the lease contract between defendant Wood Brothers and Solid Steel by drilling a core sample out of Part X. Defendant Tryson responds that the contract was not breached, or alternatively, if it was breached, there is no evidence that defendant Tryson induced defendant Wood Brothers to breach the contract. An essential element of a claim for tortious interference with a contract is that "the defendant intentionally induces the third person not to perform the contract." *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

Drawing all inferences from the evidence in plaintiff's favor, we conclude there is no evidence in the record that defendant Tryson induced defendant Wood Brothers not to perform the lease contract. Because plaintiff has not presented evidence to support an essential

_____

4. At the date of the contract, Wood Brothers was headquartered in Virginia, though it moved its headquarters to North Carolina before this lawsuit was filed.

element of his claim for tortious interference with contract, the trial court did not err in granting summary judgment in favor of defendant Tryson on the claim of tortious interference with contract. Accordingly, we affirm the judgment of the trial court on this claim.

C. Conversion

[4] Plaintiff contends that the trial court erred when it granted summary judgment in favor of defendant Wood Brothers and defendant Tryson on the claim for conversion. We agree as to both defendants.

Plaintiff alleged that defendant Tryson converted Part X when, without authorization, he (1) retained possession of the part, and (2) drilled a core sample out of it. Plaintiff argued that defendant Tryson is personally liable for conversion and also that defendant Wood Brothers is liable for conversion under the doctrine of *respondeat superior*. Defendant Tryson responded that he did not convert Part X because (1) his possession of Part X was authorized by a lease contract between Solid Steel and defendant Wood Brothers, and (2) he did not know that removing the core sample was a violation of that lease contract.

Conversion is defined as "an *unauthorized* assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Lake Mary Ltd. Part. v. Johnston*, 145 N.C. App. 525, 531, 551 S.E.2d 546, 552 (citation omitted) (emphasis added), *disc. review denied*, 354 N.C. 363, 557 S.E.2d 538-39 (2001). A lease of goods authorizes the "right to possession and use of goods for a term." N.C. Gen. Stat. § 25-2A-103 (2005). A lease of goods to a corporation impliedly authorizes the employees or agents of the corporation to possess and use the goods for the lease term, because a corporation can act only through its employees and agents. *See State v. Southern Ry. Co.*, 145 N.C. 359, 403, 59 S.E. 570, 591 (1907) (Clark, C.J., dissenting); 2 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 275 (rev. vol. 2006); *accord Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165-66, 150 L. Ed. 2d 198, 206 (2001).

When possession and use of goods is authorized by a lease, an action for conversion may lie if the lessee retains possession of the goods beyond the term authorized by the lease, provided the lessor demands the goods after the end of the lease term and the lessee refuses to return them. *See Hoch v. Young*, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203-04 (holding that because the defendant's possession

was initially authorized, the jury could find that the statute of limitations for conversion does not begin to run until the owner's lawful demand for the goods is refused), *disc. review denied*, 309 N.C. 632, 308 S.E.2d 715 (1983); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 15, at 98-100 (5th ed. 1984) [hereinafter *Prosser*]; Restatement of Torts (Second) § 237 cmt. g (1965); *accord Guaranty Nat. Ins. Co. v. Mihalovich*, 435 P.2d 648, 652 (Wash. 1967) (holding that absent demand and refusal, or some other decisive repudiation of the owner's rights, merely retaining a rental car beyond the return date specified in the contract did not establish conversion). If the defendant's refusal to return the goods is not expressed, it may be implied from the defendant's conduct. Restatement of Torts (Second) § 237 cmt. g (1965). The determination of whether a defendant has impliedly refused to return leased goods is generally a factual determination for a jury. *Id.*

According to the lease between defendant Wood Brothers and Solid Steel, Part X was to be returned to Solid Steel on 17 November 2003. Defendant Tryson had possession of Part X after that date. Plaintiff alleged that defendant Tryson would not return phone calls and that an unidentified employee of defendant Wood Brothers ignored his demand to return Part X in early December. From this evidence, we conclude that whether defendant Tryson refused plaintiff's demand for return of Part X by implication raises a genuine issue of material fact, which creates a jury question.

An action for conversion may also lie if leased goods are used in a manner that is a "major or serious departure" from the use authorized by the lease. *Prosser* § 15, at 101. Whether an action is a major or serious departure from a lease depends wholly on the facts of the case and is a determination best suited for a jury. *See Radford v. Norris*, 63 N.C. App. 501, 503, 305 S.E.2d 64, 65 (1983) (whether a party's behavior is reasonable under the circumstances is a jury question); *see also* 1 Dan B. Dobbs, *The Law of Torts* § 64, at 136-37 (2001) (whether use of property amounts to conversion is determined by an objective standard).

Under the terms of the lease, defendant Wood Brothers "agree[d] to not cut, punch, form, deform, . . . or test (in any metallurgical way), [Part X], [without] written consent by Solid Steel." Defendant Wood Brothers also "agree[d] to not 'share' any information obtained [from Part X] with . . . any fellow NASCAR competitor." It is undisputed that defendant Tryson transported Part X to Roush Racing and that defendant Tryson drilled a core sample out of Part X. The parties dis-

agree, however, about whether these actions amount to a major or serious departure from the terms of the lease. We conclude that this disagreement creates a genuine issue of material fact, appropriate for a jury to determine at trial.

Because there are genuine issues of material fact as to whether defendant Tryson converted Part X by (1) retaining it beyond the term authorized in the lease, or (2) using it in a manner not authorized by the lease, we conclude that the trial court erred when it granted summary judgment in favor of defendant Tryson on the conversion claim. Accordingly, we reverse.

**[5]** Next we consider whether plaintiff's claim for conversion against defendant Wood Brothers under the doctrine of *respondeat superior* created a genuine issue of material fact sufficient to survive summary judgment.[5] Under the doctrine of *respondeat superior*, an employer may be held vicariously liable for the torts of its employee who is acting within the scope of his employment. *Creel v. N. C. Dep't of Health & Human Servs.*, 152 N.C. App. 200, 203, 566 S.E.2d 832, 834 (2002), *cert. denied*, 357 N.C. 163, 580 S.E.2d 363 (2003). The question as to whether an employee is acting within the scope of his employment is generally a factual determination for the jury. *Edwards v. Akion*, 52 N.C. App. 688, 698, 279 S.E.2d 894, 900, *aff'd per curiam*, 304 N.C. 585, 284 S.E.2d 518 (1981). Summary judgment is not appropriate on this question unless reasonable minds could not differ as to whether the actions of the employee were undertaken in the scope of his employment. 52 N.C. App. at 698, 279 S.E.2d at 900; *see also Boudreau v. Baughman*, 322 N.C. 331, 346, 368 S.E.2d 849, 860 (1988).

It is undisputed that defendant Tryson was employed by defendant Wood Brothers during the time relevant to this lawsuit. Defendant Tryson was responsible to maximize performance of defendant Wood Brothers' race car. Plaintiff contends therefore that drilling a core sample from Part X to determine why it performed the way it did was within the scope of Tryson's employment. Eddie Wood, on the other hand, testified in his deposition that defendant Tryson acted com-

---

5. In its brief, defendant Wood Brothers' only defense to the conversion claim was that the lease contract for Part X was invalid; therefore, no conversion claim can be based on a purported use of Part X beyond what was authorized in the lease. However, considering the lease contract to be invalid *weakens* defendant Wood Brothers' argument for summary judgment in its favor, because the most fundamental question in this action for conversion is whether the undisputed possession and use of Part X by defendant Tryson and defendant Wood Brothers was authorized by its owner, Solid Steel.

pletely on his own when he drilled out the core sample. We conclude that reasonable minds could differ as to whether or not this action was within the scope of defendant Tryson's employment. Summary judgment was therefore not appropriate as to defendant Wood Brothers' liability for defendant Tryson's actions under the doctrine of *respondeat superior*. Accordingly, we reverse.

D. Misappropriation of Trade Secret

**[6]** Plaintiff contends that the trial court erred when it granted summary judgment on his claim for misappropriation of trade secret in favor of defendant Wood Brothers and defendant Tryson. We disagree.

Plaintiff argues that Part X meets the statutory definition of a trade secret, and that defendant Wood Brothers and defendant Tryson misappropriated that trade secret to improve performance on their race cars without paying Solid Steel for it. In response, defendant Wood Brothers and defendant Tryson argue that Part X is not a trade secret because it can be reverse engineered, and that even if it is a trade secret, there is no evidence that either defendant Wood Brothers or defendant Tryson ever learned the secret, or that they ever used the secret to profit themselves.

A "trade secret" is

business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a. Derives independent actual or potential commercial value from *not being* generally known or *readily ascertainable through* independent development or *reverse engineering* by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152 (2005) (emphasis added).

As discussed above, summary judgment is appropriate if the facts are undisputed and only a question of law remains. Griffith admitted in his deposition that his idea for Part X was readily ascertainable through reverse engineering. Therefore, Griffith's idea cannot be defined as a "trade secret" as a matter of law, and we affirm the trial court's grant of summary judgment in favor of both defendants on this issue.

E.  Unfair and Deceptive Trade Practices

**[7]** Plaintiff contends that the trial court erred when it granted summary judgment on his claim for unfair and deceptive trade practices in favor of defendant Wood Brothers and defendant Tryson. We disagree.

Plaintiff argues that breach of contract, retention of the core sample drilled out of Part X for three years, together with misappropriation of a trade secret support a claim for UDTP. In response, defendants argue that plaintiff has not presented evidence that defendants committed an unfair or deceptive act or practice. They further argue that plaintiff has not proved any damages resulting from any unfair and deceptive trade practices on the part of defendants.

To succeed on a claim for UDTP, a plaintiff must prove: "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998); N.C. Gen. Stat. § 75-1.1 (2005). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Mere breach of contract is not sufficient to sustain an action for UDTP, but if the breach is surrounded by substantial aggravating circumstances, it may sustain an action for UDTP. *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992); *see also Garlock v. Henson*, 112 N.C. App. 243, 246, 435 S.E.2d 114, 115 (1993) (holding that when the defendant forged a bill of sale and lied for three years in order to deprive plaintiff of a sum of money owed under a contract, the defendant's actions were sufficient to sustain a claim for UDTP); *Foley v. L & L International*, 88 N.C. App. 710, 714, 364 S.E.2d 733, 736 (1988) (holding that evidence the defendant retained plaintiff's down payment for seven months and continually maintained that the car was on its way even though it had not been ordered supported a claim for UDTP); *Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 426, 344 S.E.2d 297, 301, *disc. review denied*, 318 N.C. 283, 347 S.E.2d 464 (1986) (holding that when agreement to a contract is fraudulently induced by a promise to allow rescission of the contract, breach of that promise is sufficient to sustain an action for UDTP). Plaintiff has presented no evidence of substantial aggravating circumstances surrounding the alleged breach of contract. We already determined that plaintiff's trade secret claim is

without merit. There is no evidence in the record that defendants deceived plaintiff to induce him to enter the contract. Additionally, plaintiff has not forecast evidence which would demonstrate that retaining a small core sample from a leased part for three years is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. In sum, plaintiff has failed to support an essential element of his UDTP claim and summary judgment was therefore properly granted on the claim. Accordingly, we affirm the trial court's grant of summary judgment in favor of both defendants on the UDTP claim.

### V. Conclusion

The grant of summary judgment by the trial court is affirmed in part and reversed in part. We affirm the trial court orders granting summary judgment in favor of defendants on the trade secret claim, the tortious interference with contract claim, and the UDTP claim. We reverse the trial court orders granting summary judgment in favor of defendant Wood Brothers on the breach of contract claim, and in favor of defendant Wood Brothers and defendant Tryson on the conversion claim, and remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges TYSON and STEPHENS concur.