MARK WHITE AND TANIS T. DUFFIE, PLAINTIFF
v.
NORTHWEST PROPERTY GROUP-HENDERSONVILLE #1, LLC, DEFENDANT

No. COA12-1037

Filed 5 March 2013

1. **Appeal and Error—interlocutory orders and appeals— partial summary judgment—dismissal of counterclaims— final order**

   The order granting defendant's motion for partial summary judgment was final and properly before the Court of Appeals. Defendant's voluntarily dismissal of its counterclaims on 17 May 2012 without prejudice had the effect of making the trial court's grant of partial summary judgment a final order.

2. **Highways and Streets—public road—change of grade—loss of access to right of way—no proof of negligence**

   The trial court did not err by granting summary judgment in favor of defendant in an action seeking damages for plaintiffs' property caused by defendant's construction activities on a new road. There was no genuine issue of material fact regarding the public nature of the pertinent road. Any inconvenience suffered by plaintiffs as a result of the grading of the road authorized by the city was *damnum absque injuria* (loss without injury) and not compensable absent proof of negligence.

   Appeal by plaintiffs from judgment entered 17 May 2010 by Judge Dennis J. Winner in Superior Court, Henderson County. Heard in the Court of Appeals 10 January 2013.

   *Prince, Youngblood & Massagee, PLLC by Sharon B. Alexander, for plaintiff-appellant.*

   *No defendant-appellees brief filed.*

STROUD, Judge.

Mark White and Tanis T. Duffie ("plaintiffs") appeal from judgment entered 17 May 2010 in Superior Court, Henderson County, granting a motion for partial summary judgment filed by Northwest Property Group-Hendersonville #1, LLC ("defendant"). Plaintiffs argue that the trial court erred in granting summary judgment because defendant is not entitled to governmental immunity. For the following reasons, we affirm the trial court's order.

## I. Background

Plaintiffs previously appealed this same order. We dismissed their appeal as interlocutory. *White v. Northwest Property Group-Hendersonville No. 1, LLC*, 2011 WL 721051 (N.C.App.) (unpublished) (*"White I"*). In our previous opinion we laid out the factual background to this case:

> Plaintiffs Mark White and Tanis T. Duffie ("plaintiffs") are the owners of lots 48 and 49 located in a subdivision known as Jackson Farms Subdivision in Henderson County, North Carolina. A subdivision plat depicting the Jackson Farms Subdivision was recorded on 19 June 1950 in Plat Book 4, Page 102, Henderson County Registry, now Plat Cabinet B, Slide 342A. The Jackson Farms Subdivision plat outlines various lots and road rights-of-way in the subdivision, including the location of a forty-foot road extending the length of the subdivision from Old Spartanburg Highway to Spartanburg Highway/U.S. 176.

> Beginning in April 2007, the City Council of Hendersonville (the "City Council") began to consider the opening of the forty-foot road depicted in the Jackson Farms Subdivision plat as part of a redevelopment plan titled the Southside Transportation Study. The Southside Transportation Study was adopted by the City Council on 5 October 2006 with the goal of improving connectivity in the Southside area. As part of the redevelopment plan, a connector street was proposed between Old Spartanburg Highway and Spartanburg Highway/U.S. 176 [("the Spartanburg Connector")], where the forty-foot road in Jackson Farms Subdivision already existed.

> Defendant Northwest Property Group–Hendersonville # 1, LLC ("defendant"), proposed construction of a grocery store, a retail strip building, and a retail drug store in the vicinity of the Jackson Farms Subdivision. The City Council discussed the new construction project at its 5 April 2007 meeting. At that meeting, the City Manager stated that defendant's construction project presented an opportunity to implement the Southside Transportation Study, and that the City desired to work

with defendant to build the connector street between Old Spartanburg Highway and Spartanburg Highway/U.S. 176. The City Council agreed by consensus to proceed with the project.

At its 3 May 2007 meeting, the City Council again discussed defendant's construction project in connection with defendant's application for rezoning. At the conclusion of the hearing on the proposed rezoning of defendant's property, the City Council unanimously adopted an ordinance amending the official zoning map of the City of Hendersonville. The new zoning ordinance incorporated a map depicting defendant's property, including the forty-foot road in Jackson Farms Subdivision as the connector street between Old Spartanburg Highway and Spartanburg Highway/U.S. 176.

At its 8 November 2007 meeting, the City Council considered and approved a contractual agreement with defendant for the construction of the roadway between Old Spartanburg Highway and Spartanburg Highway/U.S. 176 where the forty-foot road through Jackson Farms Subdivision existed. The contract required defendant to undertake and complete construction of the roadway pursuant to North Carolina Department of Transportation ("NCDOT") standards. The contract also established a cost-sharing plan under which the City would fund approximately sixty-six percent of the cost of the construction of the new road. The contract became effective as of 6 March 2008 upon signature by both the City and defendant.

Defendant obtained a permit from NCDOT for the road construction. The NCDOT permit contained explicit drawings specifying the grade of the road to be built. In June 2008, defendant began to make the improvements to the road pursuant to NCDOT permit specifications. As part of this construction, defendant re-graded the existing road to a higher elevation and erected a four-foot wall along the boundary of plaintiffs' property in Jackson Farms Subdivision.

As a result of the improvements made by defendant to the forty-foot road in Jackson Farms Subdivision, plain-

tiffs are unable to access their property from that road-
way and cannot drive onto the existing driveway leading
to the garage on their property. Plaintiffs filed a com-
plaint on 26 May 2009 requesting injunctive relief and
compensation for damages to plaintiffs' property
caused by defendant's construction activities. Defend-
ant filed an answer on 22 July 2009 raising the defense
of governmental immunity and asserted a counterclaim
for breach of contract against plaintiff Mark White as to
rent owed for leased and occupied retail space.

*Id.* at *1-2.[1]

After remand to the trial court, defendant voluntarily dismissed
its counterclaims on 17 May 2012 without prejudice. Plaintiffs filed
another notice of appeal to this Court on 14 June 2012.

## II. Interlocutory Order

**[1]**

A grant of partial summary judgment, because it does
not completely dispose of the case, is an interlocutory
order from which there is ordinarily no right of appeal.
. . . Ordinarily, an appeal from an order granting
summary judgment to fewer than all . . . claim[s] is pre-
mature and subject to dismissal. However, since the
[defendant] here voluntarily dismissed the claim which
survived summary judgment, any rationale for dismiss-
ing the appeal fails. [Defendant's] voluntary dismissal of
this remaining claim does not make the appeal prema-
ture but rather has the effect of making the trial court's
grant of partial summary judgment a final order.

*Curl v. American Multimedia, Inc.*, 187 N.C. App. 649, 652-53, 654
S.E.2d 76, 78-79 (2007) (citations and quotation marks omitted).
Moreover, there are no apparent violations of our Rules of Appellate
Procedure, nor is there reason to think that the parties are attempt-
ing to misuse the Rules of Civil Procedure. *Cf. Hill ex rel. Hill
v. West*, 177 N.C. App. 132, 135-36, 627 S.E.2d 662, 664 (2006) (dismiss-
ing an appeal from partial summary judgment as interlocutory despite

---

1. There was an unimproved road called Chadwick Avenue in that right-of-way prior
to the construction at issue here. According to the documents that defendant submitted
to the N.C. Department of Transportation, the Spartanburg Connector is also known as
Chadwick Avenue Extended.

voluntary dismissal of other pending claims where counsel violated N.C.R. App. P. 28(b)(4) and it was apparent that counsel were "manipulating the Rules of Civil Procedure."). Therefore, the order granting defendant's motion for partial summary judgment is final and properly before us.

### III. Summary Judgment

[2] Plaintiffs argue that the trial court erred in granting summary judgment because defendant was not permitted to invoke governmental immunity as a contractor. The issue, however, is not whether defendant is entitled to borrow governmental immunity as a government contractor, but whether it can be held liable solely for changing the grade to a road. As will be outlined below, this issue turns on whether that road is public or private.

### A.  Standard of Review

> The trial court must grant summary judgment upon a party's motion when "there is no genuine issue as to any material fact and ... any party is entitled to a judgment as a matter of law." N.C. Gen.Stat. § 1A-1, Rule 56 (2005). On appeal, an order granting summary judgment is reviewed *de novo.*

*Griffith v. Glen Wood Co., Inc.,* 184 N.C. App. 206, 210, 646 S.E.2d 550, 554 (2007) (citation omitted).

### B.  Change of Grade

Plaintiffs allege that defendant obstructed access to the right-of-way on the western edge of their property by raising the grade of the roadway and that their loss of direct access to the right-of-way is compensable. Plaintiffs did not allege that the road was built in a negligent manner. Defendant moved for summary judgment on the ground that the Spartanburg Connector was a public road, barring any right to compensation based solely on the change in grade.

> When a public highway is established, whether by dedication, by prescription, or by the exercise of eminent domain, the public easement thus acquired by a governmental agency includes the right to establish a grade in the first place, and to alter it at any future time, as the public necessity and convenience may require. Consequently, it is the rule with us, and very generally held elsewhere, that, unless otherwise provided by

statute or constitutional provision, an abutting property owner, even if he owns the fee of the land within the highway, may not recover for damages to his land caused by a municipal corporation or the State Highway Commission changing the grade of an established street or highway, when said change is made pursuant to lawful authority and for a public purpose, and there is no negligence in the manner or method of doing the work. Any diminution of access by an abutting landowner is *damnum absque injuria*. . . . Incidental interference with the abutting owner's easements of light, air, and access by reason of the change of grade does not entitle him to compensation, in the absence of a constitutional or statutory liability.

*Smith v. State Highway Commission*, 257 N.C. 410, 414, 126 S.E.2d 87, 90 (1962) (citations and quotation marks omitted).

This rule also applies to grading work performed by a private company acting under the authority of a city. *Wood v. Duke Land & Imp. Co.*, 165 N.C. 367, 371, 81 S.E. 422, 423 (1914) (holding that the defendants, were, "as agents of the city, only doing a lawful thing in a lawful way, and, if harm came to plaintiff's property under such circumstances, it must be considered as *damnum absque injuria*, and giving him no legal right to redress." (citations omitted)). Of course, liability is only barred if the road being graded is a public road. *See Smith*, 257 N.C. at 414, 126 S.E.2d at 90 ("When a *public* highway is established . . ." (emphasis added)). Thus, the dispositive question in this case becomes: is the Spartanburg Connector a public road? Plaintiffs claim that there is at least a genuine issue of material fact as to whether it is a public road. We disagree.

C. Offer and Acceptance of Dedication

"Because North Carolina does not have statutory guidelines for dedicating streets to the public, the common law principles of offer and acceptance apply." *Tower Development Partners v. Zell*, 120 N.C. App. 136, 140, 461 S.E.2d 17, 20 (1995) (citation omitted), *app. dismissed*, 342 N.C. 897, 471 S.E.2d 64 (1996). There is no debate that the original subdivider offered to dedicate the right-of-way on which the Spartanburg Connector is situated by recording a plat showing such a right-of-way. The question is whether that dedication was accepted.

The dedication is only complete . . . when the offer is accepted in some proper way by the responsible public

authority. Acceptance may be manifested not only by maintenance and use as a public street, but by official adoption of a map delineating the area as a street, followed by other official acts recognizing its character as such.

*Id.* at 141, 461 S.E.2d at 21 (citations omitted).

Here, the zoning ordinance adopted by the city on 3 May 2007 "incorporated a map depicting defendant's property, including the forty-foot road in Jackson Farms Subdivision as the connector street between Old Spartanburg Highway and Spartanburg Highway/U.S. 176." *White I,* 2011 WL 721051 at \*1. A zoning map is one type of official map that may delineate a public road. *Tower Development Partners,* 120 N.C. App. at 141, 461 S.E.2d at 21. The only remaining question is whether there are sufficient "other official acts recognizing" the Spartanburg Connector's character as a public street. *Id.*

The City held a hearing on a rezoning application made by defendant that requested the City rezone the area to Planned Commercial Development. Part of the planned development was construction of the Spartanburg Connector, which extended the then-undeveloped Chadwick Avenue. Although the City did not initiate the Spartanburg Connector project, the City Council specifically noted that the project was in furtherance of the City's Southside Transportation Study, adopted in 2006. The City Council voted to support defendant's project and adopted the new zoning ordinance, including the map showing the Spartanburg Connector.

Defendant and the City originally planned to construct the road and have it adopted by the N.C. Department of Transportation (NCDOT). NCDOT indicated, however, that it would only accept the road if it had three lanes, which was not practical in the right-of-way at issue. At a hearing on the proposed cost-sharing agreement between the City and defendant, the City was informed that "the developer wants to proceed with the project and it will be up to the City to enter the cost-share agreement and maintain the roadway." A representative of defendant "suggested changing the language [of the cost-sharing agreement] to indicate the money will be paid to the developer upon completion and acceptance by the City." Even in light of this new information, the City Council voted to proceed with the project and approve an agreement with defendant where the City would pay 66% of the costs of construction.

The cost-sharing agreement shows that a site plan describing the Spartanburg Connector was submitted to and approved by the City. The agreement specifically required defendant to build the road to NCDOT specifications. In its agreement with defendant, the City noted that the improvement of the road "will inure to the safety and welfare of the City and its citizens and visitors." Although the agreement does not include the suggested language indicating that payment would be made upon completion and acceptance by the City, it does omit the originally proposed language which would condition the City's obligation to pay defendant "[u]pon acceptance and approval by NCDOT."

The City's recognition of the Spartanburg Connector as a public street is further manifested by the affidavit submitted by W. Bowman Ferguson, the city manager of the City of Hendersonville. Mr. Ferguson averred that

> [a]t the completion of construction of the roadway referred to in the [cost-sharing agreement], the City observed the construction project and determined that the construction satisfies the terms of the [agreement] . . . . [and that] [i]t is the intention of the City of Hendersonville hereafter to maintain the [Spartanburg Connector] so constructed as a part of the public street system of the City of Hendersonville and it has been or will shortly be added to the list of Powell Bill Streets maintained by the City.

These acts show that the City intended to accept the street, and "maintain the roadway" once complete, assuming everything was built to the agreed specifications. There is no evidence that the construction deviated from either the specifications or the standard of reasonable care.

Plaintiffs did submit a contrary affidavit regarding the character of the road. However, the relevant statements in Mr. White's affidavit are merely general denials, reassertions of his pleadings, or legal conclusions. For instance, Mr. White averred, in part:

> 11. That at all times prior to the Defendant's said actions the road located upon the Right-of-Way has never been accepted by Henderson County, North Carolina, by the City of Hendersonville, North Carolina, by the State of North Carolina, by the United States of America, or by any department or agency thereof.

. . . .

13.  That at all times pertinent to this action the Right-of-Way has been a private road right-of-way for the benefit of the Plaintiff's Property and the other lots depicted on the Subdivision plat.

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2009). None of Mr. White's relevant averments set forth any more specific facts than the general allegations of the complaint. Indeed, these assertions are nearly identical to those made in the complaint. They do not specifically contradict any fact or piece of evidence submitted by defendant. Further, it is unclear how Mr. White would have any personal knowledge of whether or not the City had ever accepted the right-of-way.

The only other evidence about the private nature of the right-of-way concerns the City's refusal to maintain the unimproved road prior to the present construction. There is no evidence that the City has refused to accept the completed road or that either the City or defendant intended that the road remain a private right-of-way. Plaintiff White's assertions alone do not create a genuine issue of material fact as to whether the City accepted the Spartanburg Connector by agreeing to fund the construction of the road and to maintain it after completion. "Where the moving party offers facts and the opposing party only offers mere allegations, there is no *genuine* issue as to a material fact." *Moore v. Fieldcrest Mills, Inc.*, 36 N.C. App. 350, 353, 244 S.E.2d 208, 210 (1978) (emphasis in original), *aff'd*, 296 N.C. 467, 251 S.E.2d 419 (1979). The only disagreement here is about the legal conclusions to be drawn from the material facts submitted to the court.

We hold that there is no genuine issue of material fact and that the City accepted the dedication of the Spartanburg Connector by adopting an official zoning map showing that road, signing a contract to pay for two-thirds of the cost of building the road, approving the designs of the road, and indicating that it was satisfied with the construction and intended to maintain the road. *See Tower Development Partners*, 120 N.C. App. at 141, 461 S.E.2d at 21.

The right of the government to establish roads "includes the right to establish a grade in the first place." *Smith*, 257 N.C. at 414, 126 S.E.2d at 90.

> If it were a person who had no right to do the act, and the same were done in its behalf, it would be a joint trespasser with the defendant, but having that right, *the defendant is relieved of liability if he assumed to do it for and on behalf of the city.* The city has assumed any liability which may have accrued to defendant, and now this liability would be only for injuries sustained by reason of unskillfulness in the work.

*Wolfe v. Pearson*, 114 N.C. 621, 631, 19 S.E. 264, 266 (1894) (emphasis added). We conclude that in constructing this new road, defendant was acting "pursuant to lawful authority [of the City] and for a public purpose." *Smith*, 257 N.C. at 414, 126 S.E.2d at 90.

The fact that a private party also benefitted from the construction of the road and paid part of the cost thereof does not alter this conclusion. *See Wood*, 165 N.C. at 370, 81 S.E. at 423 ("While the testimony shows that defendant company was active in procuring the order for lowering the grade and received some benefit from it, this was only as another abutting owner, and it also appears that the change was made under authority regularly conferred by the city government, and the work was done under the immediate direction of the city engineer, or certainly in accordance with a survey and plans supplied by him, and there is no allegation or proof that there was any negligence in the plan or execution of the work."). To hold otherwise would render this long-standing rule largely ineffectual because nearly every time a road is constructed some private party will benefit.

We hold that defendant was acting pursuant to authorization of the City and for a public purpose in constructing the Spartanburg Connector and changing the grade of the unimproved Chadwick Avenue. Plaintiffs never alleged that the construction was performed negligently. Thus, plaintiffs are not entitled to compensation because their alleged loss of convenient access to one of the two roadways abutting their property was *damnum absque injuria* (loss without injury), and the trial court did not err in granting defendant's motion for summary judgment. *See id.* at 371.

## IV. Conclusion

We conclude that there is no genuine issue of material fact regarding the public nature of the Spartanburg Connector (also known as Chadwick Avenue Extended). We hold that because the City adopted an official map showing the Spartanburg Connector, and because there were other official acts recognizing the character of that street as a public street, the Spartanburg Connector is a public street. The right of a city to grade its streets "includes the right to establish a grade in the first place." *Smith*, 257 N.C. at 414, 126 S.E.2d at 90. Any inconvenience suffered by plaintiffs as a result of the grading of the road authorized by the city is *damnum absque injuria* (loss without injury) and not compensable absent proof of negligence.[2] *Wood*, 165 N.C. at 370, 81 S.E. at 423. Therefore, we affirm the trial court's order granting defendant's motion for summary judgment.

AFFIRMED.

Judges HUNTER, JR., Robert N. and DAVIS concur.

---

2. Given our holding, we need not reach the issue of the extent to which defendant would be entitled to borrowed governmental immunity in the event plaintiffs had alleged negligence.