PATRICIA BALLANCE v. BENNY D. RINEHART, INDIVIDUALLY AND BENNY D. RINEHART, D/B/A RINEHART APPRAISALS

No. 911SC831

(Filed 21 January 1992)

**Negligence § 2 (NCI3d) — real estate appraisal — no duty of reasonable care owed to prospective purchaser**

A licensed real estate appraiser who performs an appraisal of real property at the request of a client does not owe a prospective purchaser of such property who relies on the appraisal a duty to use reasonable care in the preparation of the appraisal, since real estate appraisers have no control over the distribution of their reports once rendered and therefore cannot limit their potential liability, and a real estate appraiser performs an appraisal pursuant to a contract with an individual

BALLANCE v. RINEHART

[105 N.C. App. 203 (1992)]

client, often a lending institution or homeowner, and thus does not benefit if the homeowner later decides to distribute the appraisal to a prospective purchaser of his home.

**Am Jur 2d, Brokers §§ 101, 108; Negligence §§ 126, 127; Vendor and Purchaser § 297.5.**

**Liability to real estate purchaser for negligent appraisal of property's value. 21 ALR4th 867.**

APPEAL by plaintiff from order entered 2 July 1991 in PASQUOTANK County Superior Court by *Judge Herbert Small.* Heard in the Court of Appeals 9 December 1991.

*D. Keith Teague, P.A., by Joseph H. Forbes, Jr., for plaintiff-appellant.*

*W. T. Culpepper, III for defendant-appellees.*

GREENE, Judge.

Plaintiff appeals from an order entered 11 June 1991, dismissing plaintiff's complaint for failure to state a claim upon which relief can be granted, N.C.G.S. § 1A-1, Rule 12(b)(6) (1990).

Plaintiff instituted this action on 11 February 1991 seeking damages for economic loss allegedly caused by defendant's negligent performance of a real estate appraisal. In her complaint, plaintiff alleges that she purchased a house owned by Jack and Annie Horton after relying on a real estate appraisal prepared by defendant in which defendant stated that the house was in good condition. Plaintiff further alleges that soon after the purchase, she discovered that the house had serious structural defects and that defendant breached his duty of ordinary care by failing to discover the defects. Plaintiff alleges that defendant knew or should have known at the time that he rendered the appraisal report that, although the appraisal report was prepared for Peoples Bank and Trust Company (Peoples Bank), other persons, particularly potential home buyers, would rely on the report as verification of the condition and value of the property. On 15 February 1991, defendant moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Plaintiff filed an amended complaint on 16 May 1991, which added to plaintiff's original complaint the allegations that the appraisal report was also prepared for Jack Horton and that "defendant knew or should have known

BALLANCE v. RINEHART

[105 N.C. App. 203 (1992)]

that [owner] Jack Horton could potentially show the appraisal to potential buyers of the home." On 11 June 1991, the trial court entered an order in open court granting defendant's motion and dismissing plaintiff's complaint.

---

The dispositive issue is whether a licensed real estate appraiser who performs an appraisal of real property at the request of a client owes a prospective purchaser of such property who relies on the appraisal a duty to use reasonable care in the preparation of the appraisal.

A claim should be dismissed under N.C.G.S. § 1A-1, Rule 12(b)(6) (1990), where "it appears that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Garvin v. City of Fayetteville*, 102 N.C. App. 121, 123, 401 S.E.2d 133, 134 (1991). "[T]his will occur when there is a want of law to support a claim of the sort made, an absence of facts sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the [plaintiff's] claim." *Id.* at 123, 401 S.E.2d at 135. The complaint must be liberally construed in analyzing its sufficiency under this rule. *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987).

Plaintiff argues that the trial court's dismissal of her claim is improper since this Court has previously recognized the right of a home buyer, in the absence of contractual privity with the appraiser, to recover damages for economic loss proximately caused by negligence in the performance of a real estate appraisal. Plaintiff cites in support thereof *Alva v. Cloninger*, 51 N.C. App. 602, 277 S.E.2d 535 (1981), where this Court reversed a directed verdict for defendant real estate appraiser on plaintiff home buyer's claim for negligent misrepresentation. Like plaintiff in the instant case, the plaintiff in *Alva* alleged that he had suffered economic loss by relying on defendant's appraisal which indicated that the home purchased by plaintiff was in good condition when in fact the house contained serious defects. In reversing the directed verdict for the defendant, we held that "there was evidence from which a jury could have concluded that defendant [appraiser] should have reasonably foreseen and expected that plaintiffs would rely on the appraisal report" performed by defendant. *Alva*, 51 N.C. App. at 610-11, 277 S.E.2d at 540.

The facts in *Alva*, however, are quite different from those in the instant case. Specifically, although the defendant in *Alva* prepared the appraisal report at the request of NCNB Mortgage Corporation (NCNB), the following additional facts formed the basis of our holding: NCNB was the lending institution from whom plaintiff was in the process of obtaining the purchase money for the house; plaintiff was listed by name as the borrower on defendant's work order; plaintiff himself paid the appraisal fee; and defendant had transacted enough similar business with the lending institution that he should have been aware of the importance of his appraisals to borrowers for whom the appraisals were indirectly performed. Plaintiff in the instant case alleges simply, without specifying the original purpose for which the appraisal at issue was performed, that defendant provided the appraisal, as requested, to his clients, and that plaintiff ultimately saw it and relied on it.

Defendant contends that the present case is controlled not by *Alva* but by *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 367 S.E.2d 609 (1988). In *Raritan*, Intercontinental Metals Corporation (IMC) retained the defendants, a firm of certified public accountants and individual partners working for the firm, to provide an audit report on IMC's financial status. The plaintiffs, Raritan River Steel Company (Raritan) and Sidbec-Dosco, extended credit to IMC on the basis of what they contended was an incorrect overstatement of IMC's net worth contained in the audit report prepared by the defendants. The plaintiffs sought to hold the defendants liable for losses resulting from the extension of credit to IMC.

In assessing the scope of an accountant's liability for negligent misrepresentation to persons other than the client for whom the financial audit was prepared, our Supreme Court adopted the approach set forth in the Restatement (Second) of Torts § 552 (1977) (§552), which provides:

*Information Negligently Supplied for the Guidance of Others.*

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977). The *Raritan* Court rejected as too expansive the position adopted by some courts which extends liability to all persons whom the accountant should reasonably foresee might obtain and rely on the financial information. In doing so, the Court emphasized the policy reasons which justify establishing a narrower class of plaintiffs to whom an accountant owes a duty of care, such as the lack of control by accountants over the distribution of their reports and the fact that accountants do not benefit if their clients decide to use the report for purposes other than those communicated to the accountant. *See Raritan*, 322 N.C. at 212-13, 367 S.E.2d at 616. After applying §552, the Court held that Sidbec-Dosco had stated a legally sufficient claim against the defendants for negligent misrepresentation by alleging that at the time that the defendants prepared the audited financial statements for IMC, they knew: (1) the statements would be used by IMC to represent its financial condition to creditors who would extend credit on the basis of them; and (2) Sidbec-Dosco and other creditors would rely on those statements. *Id.* at 216, 367 S.E.2d at 618.

For the following reasons, we find *Raritan* instructive in assessing the liability of a real estate appraiser for negligent misrepresentation to prospective purchasers of the appraised property with whom the appraiser is not in contractual privity. Like an accountant, real estate appraisers have no control over the distribution of their reports once rendered and therefore cannot limit their potential liability. Moreover, like an accountant, a real estate appraiser performs an appraisal pursuant to a contract with an individual client, often a lending institution or a homeowner. For example, in the case of a homeowner who requests an appraisal in connection with a refinancing transaction, the real estate appraiser does not benefit if the homeowner later decides to distribute

the appraisal to a prospective purchaser of his home. As the *Raritan* Court noted with regard to accountants:

> [A client's distribution of the audit opinion to others] merely exposes [the accountant's] work to many whom he may have no idea would scrutinize his efforts. We believe that in fairness accountants should not be liable in circumstances where they are unaware of the use to which their opinions will be put. Instead, their liability should be commensurate with those persons or classes of persons whom they *know* will rely on their work.

*Raritan*, 322 N.C. at 213, 367 S.E.2d at 616 (emphasis added). For these reasons, we conclude that §552, which limits the class of persons to whom certain suppliers of information may be held liable for negligent misrepresentation, is the appropriate standard under which to assess a real estate appraiser's liability.

Applying this standard to the instant case, we conclude that plaintiff has failed to sufficiently allege that she is a person for whose benefit and guidance defendant *intended* to supply the appraisal report, or that defendant *knew* that the recipients of the report, Peoples Bank and Jack Horton, intended to supply it to plaintiff. In fact, plaintiff's complaint is devoid of any alleged purpose for which Peoples Bank and Jack Horton requested the appraisal in question. Defendant could have supplied the appraisal in question as part of a refinancing transaction between Peoples Bank and Jack Horton, with no intention that a third party would later see and rely on the report. In addition, as previously discussed, the instant case is distinguishable from *Alva* in light of the fact that the plaintiff in *Alva*, although not in actual contractual privity with defendant appraiser, was so closely connected to the rendering of the appraisal report that the defendant appraiser could be deemed to have known that NCNB intended to supply it to plaintiff. In such a case, the §552 standard is satisfied. Here, nothing in her complaint indicates that plaintiff played any part, directly or indirectly, in procuring the appraisal at issue. Comment h to §552 makes it clear that liability does not extend to situations where the maker "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." Restatement (Second) of Torts § 552, comment h. Accordingly, plaintiff's complaint fails to state a claim under §552 of the Restatement

(Second) of Torts, and therefore was properly dismissed by the trial court.

Affirmed.

Judges WELLS and PARKER concur.