YOLANDA HERNANDEZ, Plaintiff v. COLDWELL BANKER SEA COAST REALTY, ELLIOT and SUSAN TINDAL; SCOTT E. AVENT d/b/a AVENT APPRAISALS, INC.; BANK OF AMERICA HOME LOANS, Defendants

No. COA12-430

(Filed 6 November 2012)

**1. Appeal and Error—interlocutory orders—partial summary judgment—voluntary dismissal**

The trial court's grant of partial summary judgment became a final order and plaintiff's appeal from the order was not premature where plaintiff voluntarily dismissed her remaining claims against the other defendants.

**2. Negligence—negligent misrepresentation—real estate appraiser—insufficient allegation or forecast of evidence**

The trial court erred in dismissing plaintiff's claims against defendant real estate appraiser for negligence and negligent misrepresentation. Plaintiff failed to properly allege or forecast evidence in support of the essential elements required by Restatement (Second) of Torts § 552.

**3. Civil Procedure—summary judgment hearing—argument of multiple defendants—no error**

Plaintiff's argument that the trial court violated N.C.G.S. § 1A-1, Rule 49 by permitting multiple defendants in the matter to argue at the summary judgment hearing was meritless. Rule 49 was inapplicable, plaintiff made no objection to the proceedings during the summary judgment hearing, and there was no valid reason for plaintiff to object to the fact that the defendants were actually defending themselves.

**4. Negligence—negligent misrepresentation—enabling statute—inapplicable**

Plaintiff's argument that the trial court failed to properly interpret and apply N.C.G.S. § 93E-1-10(2) to a negligence and negligent misrepresentation case was meritless. This enabling statute did not support any of plaintiff's arguments that defendant breached his duty.

Appeal by plaintiff from order entered 18 August 2011 by Judge Charles H. Henry in Superior Court, New Hanover County. Heard in the Court of Appeals 11 September 2012.

[223 N.C. App. 245 (2012)]

*Yolanda Hernandez, pro se.*

*Crossley McIntosh Collier Hanley & Edes, PLLC, by Justin K. Humphries, for defendant-appellee.*

STROUD, Judge.

Yolanda Hernandez ("plaintiff") appeals from a trial court's summary judgment order. For the following reasons, we affirm the trial court's order.

## I. Background

On 25 May 2010, plaintiff filed a complaint against Coldwell Banker Sea Coast Realty, Elliot and Susan Tindal, Scott E. Avent d/b/a Avent Appraisals, Inc., and Countrywide Home Loans, Inc. d/b/a America's Wholesale (referred to collectively herein as "defendants"). In her complaint, she raised claims for negligence and negligent misrepresentation against defendant Coldwell Banker, claims for breach of the covenant against encumbrances against defendants Elliot and Susan Tindal, claims for negligence and negligent misrepresentation[1] against defendant Avent, and a claim for negligence against defendant Countrywide based on allegations surrounding a transaction involving plaintiff's purchase of real property in Wilmington, North Carolina. Plaintiff's complaint was amended on 30 June 2010 to add as a substitute defendant for defendant Countrywide Home Loans, Inc. defendant Bank of America Home Loan, being its successor in interest. On 11 August 2010, defendant Scott E. Avent d/b/a Avent Appraisals, Inc. ("defendant Avent") filed an answer to plaintiffs' amended complaint, raising a motion to dismiss and several affirmative defenses as well as denying the plaintiff's allegations regarding her claims for negligence and negligent misrepresentation. The deposition of plaintiff Yolanda Hernandez was taken on 2 November 2010. On 25 May 2011, defendant Avent filed a motion for summary judgment, with supporting documentation. In response, plaintiff filed affidavits and documentation in opposition to defendant Avent's summary judgment motion. The other defendants also filed motions for summary judgment. The affidavits, the transcript from plaintiff's deposition, and the additional documentation included with and in opposition to these motions tended to show that in April 2007 plain-

---

1. We presume that the other defendants also filed answers to plaintiff's complaint, as the record contains no entries of default or default judgments entered against them and they subsequently filed motions for summary judgment, but these answers were not included in the record on appeal.

tiff was thinking about investing in a multi-unit residential property and saw such a property for sale at 2134 Carolina Beach Road in Wilmington, North Carolina ("the subject property"). She stopped at the subject property to pick up an advertisement, which summarized several MLS listings, including the subject property. This advertisement described the property as a triplex and listed Julie Damron as the listing real estate agent. The MLS listing, which was prepared by Ms. Damron as an agent for Coldwell Banker Sea Coast Realty, also identified this property as a triplex.

On or about 9 April 2007, plaintiff contracted to purchase the subject property for $205,000. Ms. Damron served as a dual agent for plaintiff and defendants Elliot and Susan Tindal. Prior to contracting for purchase, plaintiff spoke only to Ms. Damron. The contract contained an appraisal contingency providing plaintiff the option to terminate the contract if the property did not appraise at the value which equaled or exceeded the sales price; this contingency expired on 30 April 2007. Plaintiff applied to Southeast Mortgage Services for a loan, and Southwest requested that defendant Avent do an appraisal of the subject property, which was performed on 16 May 2007.

On or about 22 May 2007, defendant Avent completed the appraisal report. This report described the subject property in the "Neighborhood Description" section as being a "duplex" but, in the subsequent comparison with comparable properties, it is described as a "triplex[.]" The appraisal report further stated that the subject property was legally in compliance with the R-7 zoning restrictions. It adopted the total appraisal value of $206,000 using the "sales comparison approach" but also stated a value of $212,000 using the "income approach" and a value of $211,028 using the "cost approach." Defendant Avent's affidavit stated that it was his understanding "that the [subject property] was 'grandfathered' from any zoning restrictions which would prohibit its use as a triplex rental property[.]"

Plaintiff ultimately accepted a mortgage with less favorable terms that specified in the contract, a 15 year term and a balloon payment at the end which accrued interest at a rate of 11.375 percent per annum. She stated that she never viewed a copy of the appraisal report prior to closing the purchase of the subject property; never talked to defendant Avent prior to purchasing the subject property; and she based her belief that the property was zoned to be a triplex solely on her communications with Ms. Damron. In his affidavit, defendant Avent stated that "neither I nor Avent Appraisals, Inc. had any contact or communications with plaintiff Yolanda Hernandez."

When plaintiff purchased the subject property, it had three tenants in place but, because one of the tenants was not paying rent, plaintiff evicted him from the residence. In August or September of 2007, plaintiff contacted the City of Wilmington to inquire about offering the subject property as a Section 8 rental housing but an unidentified city zoning officer informed her that the subject property could not be used as a triplex as this was an illegal use under the zoning restrictions. After this phone conversation, plaintiff did not attempt to rent the third unit but continued to rent out the two remaining units. She did not call the City back to confirm the zoning violation, nor did she try to sell the subject property. Plaintiff quit making her loan payments for the subject property over a year later, in November of 2008; the lender declared the loan in default on 19 February 2009; and the subject property was later foreclosed upon. On or about 16 February 2010, the City of Wilmington Code Enforcement Officer sent a letter to plaintiff at the address of the subject property stating that the subject property had been converted to a triplex but that use was not conforming with the uses allowed in an R-7 zone.

On 18 August 2011, the trial court entered an order granting partial summary judgment dismissing with prejudice claims against defendant Avent, but denied the remaining defendants' motions for summary judgment. Plaintiff voluntarily dismissed without prejudice her claims against the remaining defendants on 20 January 2012. Plaintiff filed written notice of appeal on 23 January 2012 from2 the trial court's 18 August 2011 order. On appeal, plaintiff contends that (1) the trial court erred in granting summary judgment in favor of defendant Avent, as her forecast of evidence showed that there was a genuine issue of material fact; (2) the trial court erred in "allowing multiple defendants in the hearing for summary judgment and allowing too many issues, all of which resulted in prolixity and confusion[;]" and (3) the trial court erred in interpreting and applying N.C. Gen. Stat. § 93E-1-10(2).

## II. Interlocutory

**[1]** As noted above, plaintiff appeals from the trial court's order granting partial summary judgment. "Ordinarily, an appeal from an order granting summary judgment to fewer than all of a plaintiff's claim is premature and subject to dismissal." *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 367, 555 S.E.2d 634, 638 (2001) (citation omitted). However, "[p]laintiff's voluntary dismissal of [the] remaining claim does not make the appeal premature but rather has the effect of making the trial court's grant of partial summary judgment a

final order." *Id.* (citation omitted). As plaintiff voluntarily dismissed her remaining claims against the other defendants, the trial court's grant of partial summary judgment became a final order and is properly before us.

### III. Standard of Review

The standard of review from a motion for summary judgment is well established:

> Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' N.C. Gen. Stat. § 1A-1, Rule 56(c). 'A trial court's grant of summary judgment receives *de novo* review on appeal, and evidence is viewed in the light most favorable to the non-moving party.' *Sturgill v. Ashe Memorial Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008).

*Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer*, ___ N.C. App. ___, ___, 705 S.E.2d 757, 764-65 (2011) (quoting *Liptrap v. Coyne*, 196 N.C. App. 739, 741, 675 S.E.2d 693, 694 (2009)), *disc. review denied*, 365 N.C. 188, 707 S.E.2d 243 (2011). "Summary judgment is appropriate if: (1) the non-moving party does not have a factual basis for each essential element of its claim; (2) the facts are not disputed and only a question of law remains; or (3) if the non-moving party is unable to overcome an affirmative defense offered by the moving party[.]" *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 210, 646 S.E.2d 550, 554 (2007) (citation, footnote, and quotation marks omitted).

### IV. Genuine Issue of Material Fact

**[2]** Plaintiff, relying on *Alva v. Cloninger*, 51 N.C. App. 602, 277 S.E.2d 535 (1981), argues that the trial court erred in dismissing her claims against defendant Avent as her forecast of evidence showed that defendant Avent, a licensed appraiser, breached his duty of care. She argues that defendant Avent provided inaccurate information in the appraisal report, which stated that the zoning ordinance permitted the subject property to be used as a triplex; defendant Avent knew that the zoning ordinance did not permit this type of use but, without checking with public records, thought that the subject property was grandfathered from any zoning restrictions; and she relied

on the appraisal report in purchasing the subject property. Defendant Avent, citing *Williams v. United Cmty. Bank*, ___ N.C. App. ___, 724 S.E.2d 543 (2012), counters that the trial court properly dismissed plaintiff's claims as the parties' forecast of evidence shows that she did not rely on the appraisal reports. The arguments raised by the parties and the cases cited in support of those arguments require a review of the applicable law regarding the duty owed by a real estate appraiser to a party not in privity of contract, such as plaintiff, a purchaser of real property.

In *Alva v. Cloninger*, 51 N.C. App. 602, 277 S.E.2d 535 (1981), the case cited by plaintiff in support of her argument that defendant Avent breached his duty of care, the plaintiffs alleged that they had suffered economic loss by relying on the defendant appraiser's appraisal which indicated that the home purchased by the plaintiffs was in good condition when in fact the house contained serious defects. *Id.* at 603-04, 277 S.E.2d at 536. At trial, the plaintiffs put forth the following evidence in support of his allegations: the plaintiffs walked through the house two times prior to contracting to purchase the subject property; the contract was conditioned upon receiving a loan and loan approval was conditioned upon an appraisal; the plaintiffs paid $100 for the appraisal; after the sale was completed, the plaintiffs immediately noticed several defects in the subject property; an expert witness testified that soil compression under the subject property had caused the defects and a majority of this settling would have occurred the first few years after it had been constructed; another expert witness testified that "a competent appraiser exercising reasonable and ordinary care would have included at least the major defects in an appraisal and would have appraised the plaintiffs' property" approximately $17,000 less than its appraised value; and the loan officer testified that major defects would have had to been repaired before the loan would have been approved. *Id.* at 605-06, 277 S.E.2d at 537-38. The defendant appraiser testified that he saw no defects when he appraised the subject property and his appraisal was accurate based on his inspection. *Id.* at 606, 277 S.E.2d at 538. The trial court granted the defendant's motion for a directed verdict at the close of the plaintiff's evidence, dismissing plaintiff's negligence claim and the plaintiff appealed. *Id.* at 609, 277 S.E.2d at 539. On appeal, this Court stated that

> [t]he absence of contractual privity between plaintiffs and defendant is not a bar to plaintiffs['] recovery in tort. See Prosser, Misrepresentation and Third Persons, 19 Vand. L. Rev. 231 (1966).

"[S]ound reason dictates that negligence liability be imposed, in appropriate circumstances, to protect the foreseeable interests of third parties not in privity of contract," [*Howell v. Fisher*, 49 N.C. App. 488, 493, 272 S.E.2d 19, 23 (1980)], and therefore, it has long been established that negligent performance of a contract may give rise to an action in tort.

*Id.* at 610, 277 S.E.2d at 540. In determining the defendant appraiser's duty to the plaintiff, the Court cited the following portion of the Restatement of Torts 2d, § 552 (1977):

[o]ne who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* at 611, 277 S.E.2d at 541. This Court then concluded that "there was evidence from which the jury could have concluded that defendant should have reasonably foreseen and expected that plaintiffs would rely on the appraisal report" as the work order included the plaintiffs' names as the "Borrowers[;]" the plaintiff paid the appraisal fee; and the defendant had transacted enough similar business with the bank that he should have been aware of the importance of the appraisal to the buyer and "the reliance that borrowers would place thereon." *Id.* at 610-11, 277 S.E.2d at 540. The Court further stated that

[t]he evidence also warrants an inference that plaintiffs actually relied on defendant's appraisal report to [the bank] and that defendant's failure to discover and disclose the alleged defects in the house was a proximate cause of plaintiffs' injury. [The plaintiff] Dr. Alva testified that the contract to purchase the house was conditioned upon his obtaining financing. The contract to purchase specifically stated "[i]n the event [plaintiffs, after exerting their best efforts to obtain financing, were unable to do so,] this contract shall be null and void." Dr. Alva also testified that he understood the loan was conditioned upon the appraisal and "assumed everything was all right when the loan was approved." [The plaintiff's] assumption as to the import of the appraisal was substantiated by the testimony of . . . the lending officer, who said

"[e]ither the repair work had to be done or we would have had to decline the loan application."

*Id.* at 611, 277 S.E.2d at 541. Based on the application of this portion of the Restatement of Torts 2d, § 552, this Court reversed the trial court's granting of directed verdict in favor of the defendant appraiser on the plaintiff's tort claim. *Id.* at 613, 277 S.E.2d at 542.

In *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 208, 367 S.E.2d 609, 614 (1988), our Supreme Court addressed the issue of "the scope of an accountant's liability for negligent misrepresentation in the context of financial audits." In addressing plaintiff Sidbec-Dosco's claim for negligent misrepresentation, the Court noted four different approaches to addressing this issue, but adopted the Restatement (Second) of Torts § 552 (1977), including the limitations in section (2)(a) & (b), which were not mentioned by the *Alva* Court:

*Information Negligently Supplied for the Guidance of Others*

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Id.* at 209-10, 214, 367 S.E.2d at 614, 617. The Court explained its understanding of the Restatement in determining an accountant's liability:

[a]s we understand it, under the Restatement approach an accountant who audits or prepares financial information for a client owes a duty of care not only to the client but to any other

person, or one of a group of persons, whom the accountant or his client intends the information to benefit; and that person reasonably relies on the information in a transaction, or one substantially similar to it, that the accountant or his client intends the information to influence. If the requisite intent is that of the client and not the accountant, then the accountant must know of his client's intent at the time the accountant audits or prepares the information.

*Id.* at 210, 367 S.E.2d at 614. The Court further explained the reasoning behind its adoption of the Restatement:

the standard set forth in the Restatement (Second) of Torts § 552 (1977) represents the soundest approach to accountants' liability for negligent misrepresentation. . . . It recognizes that liability should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely. On the other hand, as the commentary makes clear, it prevents extension of liability in situations where the accountant "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the audited financial statements], on the part of anyone to whom it may be repeated." *Restatement (Second) of Torts* § 552, Comment h. As such it balances, more so than the other standards, the need to hold accountants to a standard that accounts for their contemporary role in the financial world with the need to protect them from liability that unreasonably exceeds the bounds of their real undertaking.

*Id.* at 214-15, 367 S.E.2d at 617. The Supreme Court specifically rejected the application of the reasonable foreseeability test as adopted by *Alva*, "because it would result in liability more expansive than an accountant should be expected to bear[,]" explaining that

An accountant performs an audit pursuant to a contract with an individual client. The client may or may not intend to use the report for other than internal purposes. It does not benefit the accountant if his client distributes the audit opinion to others. Instead, it merely exposes his work to many whom he may have had no idea would scrutinize his efforts. We believe that in fairness accountants should not be liable in circumstances where they are unaware of the use to which their opinions will be put. Instead, their liability should be commensurate with those per-

sons or classes of persons whom they know will rely on their work. With such knowledge the auditor can, through purchase of liability insurance, setting fees, and adopting other protective measures appropriate to the risk, prepare accordingly.

It is instructive that Judge Cardozo, the architect of reasonable foreseeability as the touchstone for products liability, *MacPherson v. Buick Motor Co.*, 217 N.Y. 282, 111 N.E. 1050 (1916), declined to adopt the same standard for accountants' liability in *[Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. 170, 174 N.E. 441 (1931).]. Judge Cardozo distinguished accountants from manufacturers because of the potential for excessive accountants' liability. He wrote that if accountants could be held liable for negligence by those who were not in privity, or nearly in privity, accountants would face "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. at 179-80, 174 N.E. at 444. Because of this potential for inordinate liability Judge Cardozo concluded, as do we, that accountants should be held liable to a narrower class of plaintiffs than the class embraced by the reasonable foreseeability test.

*Id.* at 211, 213-14, 367 S.E.2d at 615, 616-17. The Court also held that the plaintiff Raritan's claim for negligent misrepresentation was properly dismissed, as this claim required actual reliance on the defendant's audit statements. *Id.* at 205-06, 367 S.E.2d at 612. The Court held that "a party cannot show justifiable reliance on information contained in audited financial statements without showing that he relied upon the actual financial statements themselves to obtain this information" and there was no justifiable reliance, as the plaintiff Raritan "allege[d] that it got the financial information upon which it relied, essentially IMC's net worth, not from the audited statements [produced by defendants], but from information contained in Dun & Bradstreet." *Id.* at 205-07, 367 S.E.2d at 612-13.

In *Ballance v. Rinehart*, 105 N.C. App. 203, 412 S.E.2d 106 (1992), this Court addressed the issue of "whether a licensed real estate appraiser who performs an appraisal of real property at the request of a client owes a prospective purchaser of such property who relies on the appraisal a duty to use reasonable care in the preparation of the appraisal." *Id.* at 205, 367 S.E.2d at 107. The plaintiff in *Ballance*, citing *Alva*, argued that the trial court erred in dismissing her action for damages for economic loss caused by the defendant appraiser's negligence in preparing the appraisal report, after she had relied on the

report in purchasing a property that she later discovered had several structural defects not listed in the report. *Id.* at 205, 367 S.E.2d at 108. The defendant appraiser argued that the case was not controlled by *Alva,* but by *Raritan. Id.* at 206, 367 S.E.2d at 108. The Court noted that

> The *Raritan* Court rejected as too expansive the position adopted by some courts which extends liability to all persons whom the accountant should reasonably foresee might obtain and rely on the financial information. In doing so, the Court emphasized the policy reasons which justify establishing a narrower class of plaintiffs to whom an accountant owes a duty of care, such as the lack of control by accountants over the distribution of their reports and the fact that accountants do not benefit if their clients decide to use the report for purposes other than those communicated to the accountant. *See Raritan,* 322 N.C. at 212-13, 367 S.E.2d at 616.

*Id.* at 207, 367 S.E.2d at 108-09. Based on our Supreme Court's policy reasoning in *Raritan,* the *Ballance* Court adopted the *Raritan* Court's application of the Restatement (Second) of Torts § 552 (1977), including the limitations in section (2)(a) & (b), "in assessing the liability of a real estate appraiser for negligent misrepresentation to prospective purchasers of the appraised property with whom the appraiser is not in contractual privity." *Id.* at 207, 367 S.E.2d at 109. The Court explained that like an accountant, "real estate appraisers have no control over the distribution of their reports once rendered and therefore cannot limit their potential liability" and "a real estate appraiser performs an appraisal pursuant to a contract with an individual client, often a lending institution or a homeowner." *Id.* In concluding that "plaintiff's complaint fails to state a claim under § 552 of the Restatement (Second) of Torts," and was properly dismissed, the *Ballance* Court stated that

> plaintiff has failed to sufficiently allege that she is a person for whose benefit and guidance defendant *intended* to supply the appraisal report, or that defendant *knew* that the recipients of the report, Peoples Bank and Jack Horton, intended to supply it to plaintiff. In fact, plaintiff's complaint is devoid of any alleged purpose for which Peoples Bank and Jack Horton requested the appraisal in question. Defendant could have supplied the appraisal in question as part of a refinancing transaction between Peoples Bank and Jack Horton, with no intention that a third party would later see and rely on the report.

*Id.* at 208-09, 367 S.E.2d at 109 (emphasis in original).

In *Williams v. United Cmty. Bank*, ___ N.C. App. ___, 724 S.E.2d 543 (2012), the case cited by defendants in support of their argument, the plaintiffs filed a complaint against the defendant appraisers, raising claims for, *inter alia*, negligence, and negligence misrepresentation, based on allegations surrounding the plaintiffs' investments in certain real estate development properties. *Id.* at ___, 724 S.E.2d at 547. On appeal, the plaintiffs argued that the trial court erred in granting the defendant appraiser's motion for summary judgment and dismissing those claims. *Id.* at ___, 724 S.E.2d at 547-48. In addressing the plaintiffs' claims for negligence and negligent misrepresentation, this Court relied on the holdings in *Ballance* and *Raritan*:

> In *Ballance v. Rinehart*, we considered "whether a licensed real estate appraiser who performs an appraisal of real property at the request of a client owes a prospective purchaser of such property *who relies on the appraisal* a duty to use reasonable care in the preparation of the appraisal." 105 N.C. App. 203, 205, 412 S.E.2d 106, 107 (1992) (emphasis added). We expressly adopted the approach for determining negligence by accountants as set forth by our Supreme Court in *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 201, 367 S.E.2d 609, 610 (1988). Raritan, in turn, relied on the . . . language from the Restatement (Second) of Torts[.]
>
> . . . .
>
> *Ballance*, 105 N.C. App. at 206-07, 412 S.E.2d at 108 (emphasis added)[.]

*Id.* at ___, 724 S.E.2d at 550. Without addressing whether the plaintiffs sufficiently alleged that they were persons for whose benefit and guidance defendants intended to supply the appraisal report, or whether the defendants knew that the recipients of the report intend to supply it to the plaintiffs, *see Ballance*, 105 N.C. App. at 208-09, 367 S.E.2d at 109, the Court focused on the element of plaintiffs' justifiable reliance on the appraisal reports: "plaintiffs asserting negligence claims against appraisers must forecast evidence of reliance in order to establish a *prima facie* case of negligence and negligent misrepresentation and survive a motion for summary judgment." *Id.* at ___, 724 S.E.2d at 550. As to the plaintiffs' actual reliance, the Court noted that

> [i]n deposition testimony, [plaintiff] Dr. Williams was asked whether the [defendants] made any verbal or written misrepre-

sentations to him about the lots, and he responded, "Not to my knowledge, no, prior to closing." His wife also testified that the appraisal reports had not played any role in her decision to purchase the lots.

. . . .

In addition, [plaintiff] Dr. Williams signed the purchase contract for lots 607-12 in February 2006, but no appraisals were conducted on those lots until 2 March 2006. The purchase contracts for lots 596-606 and 613-15 are not contained in the record. Thus, [plaintiff] Dr. Williams was committed to purchase at least six of his 20 lots . . . *before any appraisals had been conducted.*

All of the evidence shows that Plaintiffs made their decisions to invest in the development and contracted to do so without any awareness of, much less reliance on, the [defendant appraisers'] appraisals.

*Id.* at ___, 724 S.E.2d at 549-50 (emphasis in original). The Court went on to conclude that

Here, as discussed above, the Williams Plaintiffs cannot show that they relied on the [defendant appraisers'] appraisals in making their investment decisions, where they signed the purchase contracts without reviewing appraisals and before at least some of the appraisals were even performed. The Williams Plaintiffs having failed to forecast evidence of reliance on the appraisals, the trial court's grant of summary judgment to the [defendant appraisers] was proper. Accordingly, we affirm.

*Id.* at ___, 724 S.E.2d at 550.

Even though here, like *Alva,* there was evidence forecast that plaintiff paid the appraisal fee and she was listed as the "borrower" on the appraisal report, *Alva's* foreseeability test is not the applicable law for the case *sub judice,* based on our Supreme Court's holding in *Raritan* and the application of *Raritan* and the Restatement (Second) of Torts § 552 in *Ballance* and *Williams* to determine an appraiser's duty. Based on our Courts holdings in *Raritan, Ballance,* and *Williams,* an appraiser's duty is determined by an application of the Restatement (Second) of Torts § 552, and its limitations to liability in section (2)(a) & (b) require the plaintiff to allege and put forth evidence showing that (1) she was a person or one of a limited group of persons for whose benefit and guidance the appraiser intended to supply the information or that the appraiser knew that the recipient

intended to supply the information to the plaintiff, and (2) justifiable reliance on that information. *See Raritan*, 322 N.C. at 209-10, 214, 367 S.E.2d at 614; *Ballance*, 105 N.C. App. at 207, 367 S.E.2d at 108-09; *Williams*, ___ N.C. App. at ___, 724 S.E.2d at 550. Justifiable reliance requires that the plaintiff actually relied on the information. *See Raritan*, 322 N.C. at 206, 367 S.E.2d at 612 ("A party cannot show justifiable reliance on information . . . without showing that he relied upon the actual . . . statements themselves to obtain this information.").

In addressing the first requirement, we note that, like *Ballance*, there are no allegations in plaintiff's complaint that she was a person or one of a limited group of persons for whose benefit and guidance defendant Avent intended to supply the appraisal report or that defendant Avent knew that the recipient, the lender, intended to supply it to plaintiff. In fact, plaintiff alleges that "Defendant Avent prepared the appraisal report for the lender and the intended use of the appraisal report was for the lender to evaluate the property appraised for a mortgage finance transaction." The appraisal report itself defines the "lender/client" as Southeast Mortgage Services and specifically states, "the intended user of this appraisal report is the lender/client" and "this appraisal is for the intended use of the assigned lender/client and/or their assigns for mortgage lending purposes and is not intended for any other use."

As to justifiable reliance, plaintiff did allege that she "relied on Defendant Avent's appraisal in deciding to proceed with the purchase of the appraised property and in obtaining a mortgage to finance said purchase." Even so, just as in *Williams*, the forecast of evidence by the parties shows that plaintiff did not actually rely on defendant Avent's appraisal. Plaintiff admitted in her deposition that she never viewed a copy of the appraisal prior to closing the purchase of the subject property. She also never talked to defendant Avent prior to purchasing the property. In fact, the purchase contract contained an appraisal contingency provision allowing plaintiff the option of terminating the purchase if the property did not appraise at a value which equaled or exceeded the sale price. However, this contingency expired on or before 30 April 2007 and defendant Avent performed the appraisal on 16 May 2007; plaintiff still closed on the purchase of the property without reviewing the appraisal. Additionally, plaintiff admits in her brief on appeal that she "did not scrutinize the appraisal at any time, as generally buyers are not familiar enough with the forms to easily interpret them." Plaintiff further argues that the lender relied on defendant Avent's appraisal in approving the loan

and she relied on the bank's reliance. This is similar to the plaintiff's reliance in *Alva* that he understood the loan was conditioned upon the appraisal and "assumed everything was all right when the loan was approved." *See Alva*, 51 N.C. App. at 611, 277 S.E.2d at 541. However, reliance by proxy was rejected by *Raritan*, which stated that the justifiable reliance required by the Restatement, as illustrated above in the *Williams* case, is the plaintiff's actual reliance on the information in the report, not reliance via a third party such as the lender. *See Raritan*, 322 N.C. at 205-07, 367 S.E.2d at 612-13. In addition, unlike *Alva*, plaintiff here voluntarily waived the appraisal condition of the contract by purchasing it even after the deadline for appraisal had passed; she also agreed to accept less favorable mortgage terms than she had specified in the contract. As plaintiff failed to properly allege or forecast evidence in support of the essential elements required by Restatement (Second) of Torts § 552 against defendant Avent for her negligence and negligent misrepresentation claims, *see Griffith*, 184 N.C. App. at 210, 646 S.E.2d at 554, we hold that the trial court's grant of summary judgment was proper.

### V. Multiple Defendants in the Hearing

**[3]** Plaintiff next contends that the trial court violated N.C. Gen. Stat. § 1A-1, Rule 49 by permitting the multiple defendants in this matter to argue at the summary judgment hearing, resulting in "prolixity and confusion" as counsel for defendant Avent raised issues not relevant to the issues and "cloud[ed] the issues." Defendant Avent counters that plaintiff's argument has no merit because Rule 49 is inapplicable and she made no objection to the proceedings during the summary judgment hearing.

First, we agree with defendant Avent that N.C. Gen. Stat. § 1A-1, Rule 49 (2009) is inapplicable here, as it is only relevant to jury issues and verdicts, and plaintiff appeals from a summary judgment order. N.C. Gen. Stat. § 1A-1, Rule 56(b) permits "[a] party against whom a claim . . . is asserted" to move for summary judgment in his favor. N.C. Gen. Stat. § 1-11 (2009) states that "[a] party may appear either in person or by attorney in actions or proceedings in which he is interested." Plaintiff determined how many defendants she wanted to file claims against; they in turn filed motions for summary judgment in their favor; and they chose to be represented by counsel at this hearing. The hearing transcript shows that many of the statements which plaintiff argues were "confusing and disruptive," were merely the arguments presented by each individual defendant's trial counsel

regarding their defenses and entitlement to summary judgment. Plaintiff herself was also represented by counsel at this hearing and her counsel made arguments in opposition to defendants' motions for summary judgment. As defendant Avent points out, plaintiff raised no objection to the multiple defendants at the hearing, nor could we imagine any valid reason for a plaintiff to object to the fact that the defendants she chose to sue were actually defending themselves. Accordingly, we find no merit in plaintiff's argument.

## VI. Statutory Interpretation

**[4]** Lastly, plaintiff argues that the trial court failed to properly interpret and apply N.C. Gen. Stat. § 93E-1-10(2), which established the duties for an appraiser and demonstrates that defendant Avent breached his duty. Defendant counters that this argument is not properly before us as it was neither raised in plaintiff's complaint nor at the summary judgment hearing.

N.C. Gen. Stat. § 93E-1-10(2) (2009), under the North Carolina Appraisers Act, is an enabling statute giving authority to the North Carolina Appraisal Board to "[p]rescribe standards of practice for persons registered as a trainee licensed or certified under this Chapter[.]" Plaintiff makes no mention of any of these specific standards nor does she allege which standards, if any, defendant may have failed to fulfill. We fail to see how this enabling statute would support any of plaintiff's arguments that defendant Avent breached his duty. Accordingly, we find no merit in plaintiff's argument.

For the foregoing reasons, we affirm the trial court's order.

AFFIRMED.

Chief Judge MARTIN and Judge GEER concur.