Glassford et. al. v. Dufresne & Assocs., PC, No. 682-9-12 Wncv (Toor, J. May 14, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
WASHINGTON UNIT
CIVIL DIVISION

JAMES and HEIDI GLASSFORD
  Plaintiffs

v.

DUFRESNE & ASSOCIATES, PC
  Defendant

Docket No. 682-9-12 Wncv

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs the Glassfords are homeowners who hired Defendant Dufresne & Associates, PC (Dufresne) to investigate a failure of their septic system. The Glassfords allege that Dufresne had actually been involved with certifying the appropriateness of the system when it was constructed, and concealed that fact from the Glassfords. They allege breach of contract, consumer fraud, and negligence. Both sides have filed motions for summary judgment. Plaintiffs are represented by Kimberly Cheney, Esq.; Defendant is represented by Philip Woodward, Esq.

1.   Undisputed Facts

The court bases its decision upon the facts submitted with the parties' motions, not the additional facts submitted with Plaintiffs' reply memorandum filed on May 1. If new facts could be added to reply memoranda, motion practice could go on endlessly, with competing facts added over and over. However, having reviewed the additional facts, they would not change the court's conclusions in any way.

Plaintiffs do not dispute any of the facts in Dufresne's statement of undisputed facts. See Plaintiffs' Statement of Undisputed Facts, p. 1 (noting that the "Statement of Undisputed Facts

filed by the Defendant" was "*not objected to by Plaintiffs*")(emphasis added). Dufresne admits some of the facts submitted in the Glassfords' statement, but denies many others. The relevant undisputed facts are, in sum, as follows.

In 2005 Dufresne was hired by the builders of the home in question, D & L Homes, to certify that the on-site mound sewage disposal system met state permit requirements for a three-bedroom home. They did so. The contract between D&L and Dufresne states that it can only be modified in writing and that it supersedes all earlier oral or written agreements. Nothing in that language suggests any intent to create third-party beneficiaries of the contract.

The state issued a wastewater system permit in April of 2005. In November of 2005, the state certified that the requirements of the permit were satisfied. A wastewater system, properly used and maintained, should have a life of 20 or more years. Surface water infiltration into a septic system can cause it to fail. Hydraulic overload of a septic system can be caused by discharge from the interior of the building the system serves, or from surface water entering the system.

In January 2006 the Glassfords bought their home from D & L Homes. Plaintiffs did not see the certification letter prior to purchasing the home. In February 2006, the septic system failed. The Glassfords sought professional advice about it at that time.

In November 2008 the Glassfords hired Dufresne to investigate the failure of their mound septic system. They hired Dufresne because they knew Dufresne had previously inspected it. The report Dufresne wrote stated that it had "completed the original inspection" when the system was installed "on October 18, 2005" and had found that it was installed "in accordance with the permitted design." The Glassfords has also received an opinion about the issues with the septic system from the system's designer before the Dufresne site visit in November 2008.

2

The parties agree that all of the damages being sought in this case are economic losses. Defendant's Statement, ¶ 21. It is also undisputed that the contract between Dufresne and D & L Homes was not a contract between Dufresne and a "consumer" as defined by the Consumer Fraud Act. Id, ¶ 33. Dufresne had no direct role in the January 2006 sale of the house to the Glassfords, and provided no documents or information to them in connection with the sale. The Glassfords concede that they cannot prove that any of their claimed damages were caused by the 2008 inspection report done by Dufresne. Id, ¶ 34. The Glassfords' expert testified at his deposition that there was no reason to replace the septic system until after first trying to regrade the surrounding area and make it watertight.

Although Dufresne's statement of material facts states that this case was "commenced on August 28, 2012," the court file instead shows that the complaint was filed on September 26, 2012. The return of service filed with the court shows that Dufresne was served with the complaint prior to filing, on September 13, 2012.

## I. Dufresne's Motion

Dufresne argues that it is entitled to judgment on several grounds. The court begins with the argument relating to the statute of limitations, as that issue could be dispositive.

### a. Statute of Limitations

Dufresne argues that because the septic system failed in February of 2006, and this case was not filed until after February of 2012, the six-year statute of limitations for property loss and economic loss had expired before suit was filed. 12 V.S.A. §§ 511-512. However, Dufresne's argument relies upon facts that are not set forth in its undisputed facts: that the Glassfords had other contractors tell them the issue was ponding and grading in February 2006. Because those facts are not established, the court cannot rule on the issue based upon the current record.

3

b.  Consumer Fraud Claims

There are two Consumer Fraud Act claims asserted here. One relates to the 2005 certification and the other relates to the 2008 report.  The 2005 claim is that  Dufresne omitted any certification as to grading, and that the omission was therefore an unfair and deceptive trade practice. However, the certification, whether inadequate or not, was not made to the Glassfords by Dufresne. It was made to the home builder and the State.

The Glassfords argue that because permits run with the land, the lack of privity between the parties is irrelevant. Essentially they assert that all members of the public are entitled to rely upon such certifications because they are intended to protect public health. The court is unpersuaded. There was no relationship between the parties here until years after the certification. A consumer fraud claim requires  a contract for goods and services between the consumer and the seller/violator. 9 V.S.A. § 2461(b). There was no such contract in connection with the certification. Statements made, or not made, to the builder of the home in 2005 cannot serve as the basis for a consumer fraud claim by the Glassfords.

The 2008 claim is that the report (1) contained false representations with regard to who designed the septic system, the possible causes of its failure, and Dufresne's competence to opine on the issue, and (2) "failed to state that the septic system was overloaded because it was not sited properly and surface water run off was permitted to flood the leach field." Complaint ¶ 17. The complaint alleges that the false representations affected the Glassfords' "decision to contract with" Dufresne, and that they were harmed because they were unable to identify someone to sue for the funds to fix the system, were unable to enjoy the use of their home, suffered mental anguish, and have been forced to live there without a working system because they could not afford to fix it (until they borrowed funds). Id. ¶¶ 34-35.

4

The claim that the alleged false representations made in the report in 2008 led the Glassfords to contract with Dufresne make no sense, as the contract was for preparation of that very report. Complaint ¶ 12. There are just no facts supporting a claim that the Glassfords acted "in reliance upon" any misrepresentation made by Dufresne in 2008. 9 V.S.A. § 2461(b). Their claim for consumer fraud in 2008 fails.

### c.  The Contract Claim

Count 1 alleges that Dufresne breached its contract with D&L Homes, the builder of the home the Glassfords later purchased. It alleges that the contract was intended by both parties to make "all assigns and successors in interest" third-party beneficiaries of the contract, and that the Glassfords thus have a claim against Dufresne. Complaint, ¶ 27. The Glassfords admit, however, that (1) the contract between D&L and Dufresne states that it can only be modified in writing and that it supersedes all earlier oral or written agreements, and (2) nothing in that language suggests any intent to create third-party beneficiaries of the contract. Defendant's Statement of Undisputed Material Facts, ¶¶ 2-3. The Glassfords argue instead that the certification "ran with the land," that it was made to the Agency of Natural Resources, and that the Agency was "an agent of the Plaintiffs  in helping them to obtain a home with a functioning septic system." Plaintiffs' Mem. in Response at 16. An interesting idea, but unsupported by any case law.

Generally, "a plaintiff who is not a party to a contract does not have standing to challenge a breach of that contract." Dernier v. Mortgage Network, Inc., 2013 VT 96, ¶ 28. To establish that one is a third-party beneficiary entitled to enforce another's contract, a plaintiff must show that it was the intent of the contracting parties to create such a status. McMurphy v. State, 171 Vt. 9, 16 (2000). The Glassfords point to nothing in the contract between H&L and Dufresne suggesting an intent to benefit the Glassfords. "There was no intention manifested in the

5

language of the contract that either [party] intended to confer" a cause of action upon later purchasers of the home. Id. at 17. "The fact that plaintiffs have a contractual relationship with defendants does not give them standing to challenge [H&L's] contract with defendants." Bischoff v. Bletz, 2008 VT 16 , ¶16, 183 Vt. 235. As another court has noted in rejecting a claim that a home buyer was a third-party beneficiary of a former owner's contract for soil testing and site planning for a septic system, "both contracting parties must intend to confer enforceable rights in a third party." Grigerik v. Sharpe, 721 A. 2d 526, 536 (Conn. 1998).

Dufresne cites cases from other jurisdictions for the proposition that the mere fact that the contracting parties know that later owners will incidentally benefit from the work does not cerate third-party beneficiary status. For example, in 155 Harbor Drive Condo Ass'n v. Harbor Point, Inc., 568 N.E. 2d 365, 374 (Ill. App. 1991), the court explained:

> There is no question that the parties were aware that the building was being built for subsequent purchasers. However, "[i]t is not enough that the parties know, expect or even intend that" such people may benefit or that they are referred to in the contract…

(citation omitted). Here, the Glassfords cite no contrary cases, no language of the contract, and no other evidence to support their argument. They cite no authority to support their alternate theory of the law: that some sort of third-party beneficiary status exists separate from the intent of the parties. Their claim fails.

### d. Negligence Claim

The remaining claim is one for negligence, based upon the 2005 contract between D&L and Dufresne. The Glassfords allege that it was a professional service contact by which Dufresne was to (1) determine whether the septic system was constructed according to the plans, (2) certify to the ANR that the construction was done properly, and (3) certify that other terms and conditions of the permit were complied with. Complaint ¶ 48. They go on to allege that

6

Dufresne "negligently failed to determine that the septic system had not been constructed in conformity with the Chase & Chase plans," and that this negligence "proximately caused Plaintiffs to purchase the House and experience the harm alleged in this Complaint. . . " Id. ¶¶ 51-52.

Dufresne argues that this claim fails for several reasons: (1) that Dufresne owed no duty of care to the Glassfords, (2) that the claim is barred by the economic loss rule, (3) that the Glassfords did not rely upon the certification and thus cannot prove causation.

The duty to which the Glassfords point is described as follows: "Defendant had a duty imposed by law to certify the Plaintiffs' wastewater system had been constructed in accordance with the permitted Chase & Chase plan." Plaintiffs' Mem. in Response at 11-12. However, they fail to cite what law creates such a duty.[1] They also cite absolutely no authority for the proposition that such a duty, even if it existed, was owed *to the Glassfords*. The only case they cite relates to a duty of care in a completely different context. Kennery v. State of Vermont, 2011 VT 121, ¶¶ 11-12, 191 Vt. 44. It is of no use in determining whether a duty of care runs from an engineer certifying a septic system to a later purchaser of the property.

However, it appears that what the Glassfords are really arguing is what the Restatement of Torts refers to as "information negligently supplied for the guidance of others." Restatement of Torts (Second) § 552 (1977)(Westlaw updated March 2014). The Restatement explains:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss

---

[1] Although not in connection with this issue, Plaintiffs discuss a statutory duty for engineers to properly certify septic systems. However, they have offered no citation to such a statute. The references to 10 V.S.A. § 1973 do not assist the court, as nowhere in that statute does the court find any duty imposed on engineers. Instead, the statute addresses requirements for permits, which include certifications by engineers. That is not the same thing. The Glassfords also argue that because certifications "run with the land" they create a tort duty to later purchasers, but again fail to offer anything other than their own theorizing to support this argument.

> caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

This applies only to "loss suffered . . . by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it," and the loss must be the result of "reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." Id.[2] That is what is claimed here: that Dufresne negligently supplied H&L inaccurate information which it knew a purchaser of the home would rely upon, that the Glassfords so relied in buying the home, and that they have suffered financial harm as a result.

The Vermont Supreme Court has adopted this provision of the Restatement. Howard v. Usiak, 172 Vt. 227, 230-31 (2001). Thus, the court concludes that the Glassfords may be able to establish a duty owed to them. *See, e.g*., Burbach v. Radon Analytical Laboratories, Inc., 652 N.W.2d 135 (Iowa 2002) (allowing claim of home purchasers to proceed against home inspection company that had done inspection for seller).

The next issue is whether this claim is barred by the economic loss rule. The general idea of the economic loss rule is that it "prohibits recovery in tort for purely economic losses." EBWS, LLC v. Britly Corp., 2007 VT 37, ¶ 30, 181 Vt. 513. It essentially draws a line between

---

[2] One example provided is as follows: "[W]hen a vendor of beans employs a public weigher to weigh beans, the weigher, who gives to the vendee a certificate which through his carelessness overstates the weight of the beans, is subject to liability to the vendee for the amount that he overpays in reliance upon the certificate." Id., cmt g. Another is this: "The City of A is about to ask for bids for work on a sewer tunnel. It hires B Company, a firm of engineers, to make boring tests and provide a report showing the rock and soil conditions to be encountered. It notifies B Company that the report will be made available to bidders as a basis for their bids and that it is expected to be used by the successful bidder in doing the work. Without knowing the identity of any of the contractors bidding on the work, B Company negligently prepares and delivers to the City an inaccurate report, containing false and misleading information. On the basis of the report C makes a successful bid, and also on the basis of the report D, a subcontractor, contracts with C to do a part of the work. By reason of the inaccuracy of the report, C and D suffer pecuniary loss in performing their contracts. B Company is subject to liability to C and to D." Id., cmt h, illustration 9.

tort and contract claims, assigning certain types of relationships to the contract category. The Vermont Supreme Court has explained:

> In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.

Id. "Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss." Gus' Catering, Inc. v. Menusoft Sys., 171 Vt. 556, 558 (2000) (mem.).[3]

However, the tort duty discussed above for negligently supplying inaccurate information appears to be an exception to the rule. It expressly provides a tort remedy for "pecuniary loss," as opposed to personal injury. Restatement (Second) of Torts § 552, subsection (1). For a claim of "negligent misrepresentation, the damages recoverable are those necessary to compensate the plaintiff for the pecuniary loss suffered." Pearson v. Simmonds Precision Products, Inc., 160 Vt. 168, 173 (1993). *See also,* Eastwood v. Horse Harbor Foundation, Inc., 241 P. 3d 1256, ¶¶ 14, 24 (Wash. 2010) (citing negligent misrepresentation as an exception to the economic loss rule); 5 Bruner & O'Connor on Construction Law § 17:19, Theories of Design Professional Liability – Negligence Liability (Westlaw updated July 2013)(Noting that the economic loss limitation "is

---

[3] The economic loss doctrine is one of the messier areas of the law. "Doubts about the coherence of a generally applicable economic loss rule have frequently been raised." Vincent R. Johnson, The Boundary-Line Function of the Economic Loss Rule, 66 Wash. & Lee L. Rev. 523, 529 (Spring 2009). "Courts and commentators struggle to define the doctrine and its scope." Benjamin Edwards, Rolling Back The Economic Loss Doctrine In Securities Disputes Against Financial Intermediaries, 20 No. 1 PIABA Bar Journal 39 (2013). It has been called "one of the most confusing doctrines in tort law." R. Joseph Barton, Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims, 41 William and Mary Law Review 1789 (May 2000). Its outlines "are difficult to define and vary by jurisdiction." Rolling Back at 41. The origin of the rule "is subject to some debate and its application and parameters are somewhat ill-defined." Moransais v. Heathman, 744 So. 2d 973, 979 (Fla. 1999).

tempered somewhat by § 552 of the Restatement Second, Torts, wherein tort recovery for pecuniary loss is permitted in situations where one negligently supplies information to another anticipating that the other will be guided and rely upon the information."); William H. Hardie, Liability of Professionals for Negligent Certification, 55 Alabama Lawyer 226, 231 (July 1994) ("All professionals who issue opinions and certifications must be aware that their work product can be the source of liability beyond their own clients unless they take an active role to limit the dissemination of their opinions or certifications.").

The next question is whether the Glassfords cannot prove that they relied upon the 2005 certification. The Glassfords admit they did not see it until years later. However, they assert that their lawyer's title search flagged that no certification had been filed, he then obtained a copy in time for the closing, and they relied upon their lawyer's advice that title was good. Thus, they argue, they "relied" upon the certificate because title would have been unmarketable without it and they would never have bought the house. Plaintiff's Response Mem. at 12.

The problem with this theory is that the case law makes clear that reliance under Section 552 of the Restatement must be direct, not indirect. "The predicate to a finding of justifiable reliance is actual reliance." Marble v. First American Flood Data Services, Inc., 2004 WL 5582088, *2 (Vt. 2004)(mem.). An argument similar to the Glassfords was made in Brinkman v. Barrett Kays & Associates, P.A., 575 S.E. 2d 40 (N.C. App. 2003). In that case, the plaintiff homebuyers sued the designer of a waste disposal system for their development. The court noted that the allegedly incorrect statements by the engineers

> were made to the [state permitting] department, which relied upon them and issued permits to defendants. Plaintiffs relied upon the department to fully investigate defendants' application for permits. Plaintiffs relied upon the original permits and the re-issuance of the permits to conclude that their waste disposal system was functioning correctly. . . . However, there is no evidence that

10

plaintiffs relied upon statements made by defendants as required by Restatement § 552(1).

Id. at 44. Thus, there was no actual reliance and the claim failed to meet the requirements of a negligent misrepresentation claim.

Another case in which an analogous argument was rejected for lack of actual reliance is White v. BDO Seidman, LLP, 549 S.E.2d 490, 493-94 (Ga. App. 2001). In that case, investors sued an accounting firm for negligently certifying financial statements of companies in which plaintiffs invested to their detriment. Their negligent misrepresentation argument was as follows:

> [T]their decision to buy the securities was "causally dependent" upon or "closely connected" to BDO's audit opinions in that (1) the Securities & Exchange Commission ("SEC") would not have approved the public offering without BDO's audit opinions; and, (2) the appellants' brokers would not have sold the securities without SEC approval. Therefore, the appellants indirectly relied upon BDO's audits because the audits were necessary to make the securities available to them.

Id. at 493. The court rejected the argument, finding that actual reliance is required. *See also*, Hernandez v. Coldwell Banker Sea Coast Realty, 735 S.E.2d 605, 614 (N.C.App. 2012) (rejecting claim by purchaser against appraiser on theory that she would not have been able to purchase the property but for the appraisal, even though she never saw it, noting that "the plaintiff's actual reliance on the information in the report, not reliance via a third party such as the lender," is required).

It is undisputed that there was no actual reliance here. The indirect reliance argument cannot succeed, and this is fatal to the Glassfords' claim.

## II. The Glassfords' Motion

The Glassfords have filed a cross-motion for summary judgment. It addresses all of the same issues discussed above. Thus, the rulings above dispose of their claims.

11

<u>Order</u>

Dufresne's motion for summary judgment is granted. The Glassfords' motion is denied.
Judgment will be entered for Dufresne.

Dated at Montpelier this 14th day of May, 2014.

_____
Helen M. Toor
Superior Court Judge